WELLS *v.* DETROIT AUTOMOBILE INTER-
INSURANCE EXCHANGE

1. INSURANCE—AMBIGUITY—CONSTRUCTION.
   An ambiguity in an insurance policy is, as a general rule, con-
   strued against the insurer and in favor of the insured.

2. INSURANCE—AUTOMOBILE INSURANCE—UNINSURED MOTORIST—COV-
ERAGE.
   Plaintiffs were not insured against damages caused by an un-
   insured motorist where their original insurance policy is-
   sued by the defendant provided that the plaintiffs were in-
   sured against only those damages for which a specific
   premium was indicated in the declaration certification, the
   declaration certification did not indicate a specific premium
   for damages caused by an uninsured motorist, a later policy
   form issued by the defendant contained a notice complying
   with the then recently-enacted statute governing the issu-
   ance of policies without coverage for damage from uninsured
   motorists, a policy indorsement, issued when plaintiff re-
   quested additional coverage provided additional medical,
   comprehensive, and collision coverage, but not uninsured
   motorist's coverage, and plaintiffs admitted that they were
   offered uninsured motorist coverage, never rejected such cov-
   erage in writing, and never thought that they had uninsured
   motorist coverage (MCLA § 500.3010).

3. INSURANCE—AUTOMOBILE INSURANCE—UNINSURED MOTORIST COV-
ERAGE—POLICY AMENDMENTS—STATUTES.
   Statute governing uninsured motorist coverage in an insurance
   policy does not as a matter of law compel the inclusion of
   uninsured motorist coverage in an insurance policy even

REFERENCES FOR POINTS IN HEADNOTES
[1]  43 Am Jur 2d, Insurance § 257 *et seq.*
[2–4]  7 Am Jur 2d, Automobile Insurance § 135 *et seq.*

though there has been no written rejection of such coverage in a policy amendment, issued after the effective date of the applicable statute, where the amendment was to an insurance policy issued before the effective date of the statute (MCLA § 500.3010).

4. INSURANCE—AUTOMOBILE INSURANCE—UNINSURED MOTORIST COVERAGE—STATUTES.

Insurance company's delivering to the plaintiffs after the effective date of the statute governing the issuance of policies without uninsured motorist coverage, a new revised insurance policy form indicating coverage for plaintiffs' newly-acquired automobile did not entitle the plaintiffs to uninsured motorist coverage where the plaintiffs had an existing insurance policy, issued by the defendant before the effective date of the statute, that policy provided that the defendant would insure a replacement automobile and that no coverage was extended for any risks unless a specific premium payment was indicated in a declaration certification and no declaration certification or the recently-issued indorsement indicated a special premium payment for uninsured motorist coverage, because the rights and obligations of the parties were fixed by the contract of insurance existing before the effectiveness of the uninsured motorist coverage insurance statute (MCLA § 500.3010).

Appeal from Wayne, Harry J. Dingeman, Jr., J. Submitted Division 1 October 7, 1970, at Detroit. (Docket No. 8474.) Decided December 10, 1970.

Complaint by Albert and Lillian Wells against Detroit Automobile Inter-Insurance Exchange for declaratory judgment construing automobile insurance contract and effect of statute. Summary judgment for defendant. Plaintiffs appeal. Affirmed.

*Sanford N. Lakin,* for plaintiffs.

*Rouse, Selby, Dickinson, Shaw & Pike (Daniel K. Converse,* of counsel), for defendant.

Before:   Lesinski,   C.   J.,   and   Bronson   and Engel,* JJ.

Engel, J.   This is an appeal from a summary judgment in favor of defendant in a action for declaratory judgment construing an automobile insurance contract and the effect of MCLA § 500.3010 (Stat Ann 1970 Cum Supp § 24.13010).

The facts were agreed to by the parties.   Plaintiffs had an autmobile insurance policy with defendant for a term beginning September 25, 1965 and ending September 25, 1966.   The constituent parts of that policy were (1) defendant's form #U–142–1–1–65 entitled "Combination Automobile Policy", and (2) the "Declaration Certificate".   The policy form contained the following language:

"Declaration Certificate:   This policy form together with the Declaration Certificate constitutes the complete policy.   This insurance is against only such and so many of the perils named in the Declaration Certificate as are indicated by a specific premium entry. The limit of the Exchange's liability against each of such perils shall be as stated in the Declaration Certificate and subject to the terms of this policy form."

A further provision of the policy in describing a replacement automobile provided that:

"(g) 'replacement automobile' means an automobile or trailer, ownership of which is acquired after the effective date of this policy by the named insured who is the owner of the described automobile, provided it replaces the described automobile or trailer and notice of its acquisition is given the exchange within 30 days of the date of its delivery to such named insured and such named insured agrees to pay

---

* Circuit judge, sitting on the Court of Appeals by assignment.

any premium or adjustment of premium applicable with respect to such automobile."

The Declaration Certificate showed the insured vehicle to be a 1958 Buick and indicated that the coverage extended was bodily injury liability and property damage liability.

MCLA § 500.3010 (Stat Ann 1970 Cum Supp § 24.13010) became effective on January 1, 1966, and, in part, requires motor vehicle liability insurers to provide uninsured-motorist coverage unless the named insured rejects such coverage in writing as provided in the act. The pertinent portion of that statute, § 3010, provides that:

"No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death * * * shall be delivered or issued for delivery in this state * * * unless coverage is provided therein or supplemental thereto * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles * * * unless the named insured rejects such coverage in writing as provided herein. All such policies shall contain a notice, displayed prominently on the front page of the policy, in at least 8-point type that such protection coverage was explained to him and that he can reject such coverage by notice in writing. Unless the named insured requests such coverage in writing, it need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer."

On or about February 1, 1966, defendant began using a new form #U-142-2-1-66 entitled "Combination Automobile Policy". This form contained

notice about the uninsured-motorist coverage required by MCLA § 500.3010.

In June 1966, plaintiffs sold the 1958 Buick insured by the defendant and purchased a 1962 Buick. Plaintiffs applied to the defendant insurance company to have their insurance transferred to the 1962 Buick and to obtain additional coverage. Defendant issued and mailed to plaintiffs a document entitled "Automobile Policy Endorsement". This endorsement recited the following additional coverage:

"Medical Payments Coverage Added Full Comprehensive Coverage Added Collision Coverage Added/ Policy Expires 9–25–66/Car Description Changed."

It was conceded by the parties for the purposes of appeal that the new policy form #U–142–2–1–66 and the "Automobile Policy Endorsement" were mailed to the plaintiffs. Moreover, for purposes of appeal, plaintiffs further concede that they were never offered uninsured motorist coverage, never rejected such coverage in writing, nor thought that they had uninsured-motorist coverage.

On August 29, 1966, plaintiffs were injured when their 1962 Buick collided with another automobile in Indiana, for which it is conceded there was no liability coverage and for which no recovery is available under the Motor Vehicle Accident Claims Act, MCLA § 257.1101 et seq., as amended (Stat Ann 1968 Rev § 9.2801 et seq., as amended). The plaintiffs then brought this action for declaratory judgment, asking for a judgment that plaintiffs had uninsured-motorist coverage through the defendant insurance company. The trial court ruled that plaintiffs did not have such coverage.

The general rule is that where there is an ambiguity in an insurance policy, it should be construed

against the insurer and in favor of the insured. *Lintern* v. *Zentz* (1950), 327 Mich 595, 600; *Federal Mutual Insurance Co.* v. *Casey* (1969), 16 Mich App 214, 215.   However, no ambiguity exists here.   An examination of the "Automobile Policy Endorsement" together with the stipulated facts is convincing that the parties intended an amendment of the existing insurance policy of September 25, 1965, and that the policy coverage was to be amended only to the extent indicated on the endorsement.   The original policy form #U–142–1–1–65, quoted above in part, clearly indicates that the Declaration Certificate was intended to control the extent of coverage, and the subsequent Automobile Policy Endorsement merely added more coverage.   Neither the Declaration Certificate nor the subsequent endorsement indicated a specific premium entry for uninsured-motorist coverage.   Therefore, the plaintiffs did not have such coverage unless MCLA § 500.3010 (Stat Ann 1970 Cum Supp § 24.13010) is read to compel its inclusion as a matter of law where there is no written rejection of such coverage in a subsequent amendment to a policy in existence prior to the effective date of the statute.   While we do not believe that the statute should be so read, to the extent that it can, we concur in the trial judge's conclusion that such a reading would be inconsistent with Const 1963, Art 1, § 10:

"No bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted."

The plaintiffs rely heavily upon the fact that a copy of the defendant's new form #U–142–2–1–66 was delivered with the Automobile Policy Endorsement subsequent to the effective date of MCLA § 500.3010.   It is argued that the defendant volun-

tarily brought itself within the new act and that an entirely new contract of insurance was agreed upon.

Alternately, the plaintiffs argue that by the inclusion of the 1966 revised form, the defendant insurer brought itself within the meaning of the uninsured-motorist statute in that it "delivered or issued for delivery in this state" a policy of automobile insurance after the effective date of the act. In either event, it is argued that the plaintiffs acquired the uninsured-motorist coverage because that provision then became a part of the contract, and therefore, it was controlling in the absence of written refusal of such coverage. We disagree.

We do not know why the 1966 form was included with the new endorsement. Certainly, it could not have impaired the contract rights of the insureds which had already been paid for in 1965. Neither do we conclude that it could have been intended to impair the same rights of the insurer except to the extent to which it specifically agreed. In extending the insurance coverage to the new automobile, the insurance company was merely providing the insureds with that which it had already bound itself to provide under the quoted section of the policy with respect to replacement automobiles. If the insureds paid the additional premium, the insurance company was legally obligated to provide coverage for a replacement automobile. This accounts for the endorsement. While § 19 of the general conditions and conclusions of the 1965 contract obligated the defendant to provide broader coverage where a revised policy form so provided, still this was specifically conditioned upon the fact that such coverage was provided without additional premium. Very clearly uninsured-motorist coverage called for an additional premium, and there could be no mistake between the parties as to this fact. Since the un-

insured-motorist coverage under the new policy was not available without additional premium charge, that coverage did not become a part of the 1965 contract.

Affirmed.

All concurred.