446 So.2d 216 (1984)
METROPOLITAN PROPERTY AND LIABILITY INSURANCE COMPANY, a Corporation, Appellant,
v.
Richard GRAY and Nancy Marie Gray, His Wife, Appellees.
No. 82-1677.
District Court of Appeal of Florida, Fifth District.
March 1, 1984.
*217 Sutton G. Hilyard, Jr. and Michael K. Bailey, of Pitts, Eubanks & Ross, P.A., Orlando, for appellant.
*218 John DeM. Haines, of Winderweedle, Haines, Ward & Woodman, P.A., Winter Park, for appellees.
COWART, Judge.
The issues in this case are to what extent and under what circumstances the contractual rights and obligations of an insured and an insurer can be varied or impaired by a statutory amendment and whether an uninsured motorist policy with a per person limitation provides less coverage than a liability policy without a per person limitation.
"No bill of attainder, ex post facto law or law impairing the obligation of contracts shall be passed." Art. I, § 10, Fla. Const.
Prior to its amendment[1] effective October 1, 1980, section 627.4132, Florida Statutes (1979), mandated that every uninsured motorist policy provide total coverage only to the extent of coverage on one of the vehicles covered (called anti-stacking). The amendment removed this restriction thus permitting policies to be interpreted to provide total uninsured motorist coverage equal to the sum of that relating to all vehicles covered (called "stacking").
Prior to the statute's amendment appellee Richard Gray entered into a contract for automobile insurance with appellant Metropolitan Property and Liability Insurance Company. The policy was for a period of one year, to expire, or to be renewed, on July 26, 1981. The policy provided uninsured motorist and other coverage on three vehicles and for three named drivers, Richard, Nancy and Kathleen Gray. The policy provided for a maximum of $100,000 in bodily injury coverage per accident with no per person limit but uninsured motorist was limited to $50,000 per person and $100,000 per accident. In keeping with the intent of the statute before its amendment, the policy specifically provided that no more than $100,000 per accident would be paid regardless of the number of persons insured under the policy and regardless of the number of automobiles insured under the policy. After the effective date of the statutory amendment (October 1, 1980) but before the renewal date of the policy (July 26, 1981) an additional driver, James Gray, was added to the policy. Soon afterwards (on January 30, 1981), Nancy Gray was injured in an accident with an underinsured tortfeasor while a passenger in a vehicle covered under the policy and driven by Richard Gray. Nancy and Richard Gray obtained a declaratory judgment in their favor holding (1) that the uninsured motorist coverage was not subject to the $50,000 per person limitation and provided the same amount coverage as the bodily injury liability coverage ($100,000), and (2) in effect, that the amended statute, which permits stacking, applied so as to invalidate the anti-stacking provision of the policy and to cause the uninsured coverage on the three insured vehicles to be available for a total coverage of $300,000. The insurer appeals.
It is generally held that the renewal of a contract of insurance constitutes the making of a new contract for the purpose of incorporating into the policy changes in the statutes regulating insurance contracts. Conversely, statutory changes occurring between renewals cannot be incorporated into the policy without unconstitutionally impairing the obligations of the parties to the insurance contract. See, e.g., Dewberry v. Auto Owners Insurance Co., 363 So.2d 1077 (Fla. 1978); Lumbermens Mutual Casualty Co. v. Ceballos, 440 So.2d 612 (Fla. 3d DCA 1983); Florida Insurance Guaranty Ass'n v. Johnson, 392 So.2d 1348 (Fla. 5th DCA 1980); Hausler v. State Farm Mutual Automobile Insurance Co., 374 So.2d 1037 (Fla. 2d DCA 1979); Bunch v. Hartford Accident and Indemnity Co., 370 So.2d 455 (Fla. 4th DCA 1979). The renewal date is usually certain and definite and litigation rarely arises concerning whether statutes in effect on the renewal date are applicable to the policy. It is generally accepted that they are. The difficult question is whether statutes that become effective during the *219 time between the effective date of legislation regulating insurance contracts and the renewal date of a policy are effective to change, alter or amend a policy. But for Article I, section 10 of the Florida Constitution, this issue would be merely one of legislative intent. However, regardless of the intent of the legislature, a statute may not, constitutionally, alter, amend or impair the rights of the parties to an existing contract. Thus, the amendment to section 627.4132 does not apply in the instant case unless, between the effective date of the amendment (October 1, 1980) and the date of the accident (January 30, 1981), a new contract was made between the parties.
Sentry Insurance A Mutual Co. v. McGowan, 425 So.2d 98 (Fla. 5th DCA 1982), rev. den., 434 So.2d 888 (Fla. 1983), considered the question of whether the addition of a vehicle to an existing policy of insurance constituted the issuance of a "new policy" which incorporated statutory provisions enacted after the issuance of the original policy. In that case, the applicable version of section 627.727(1), Florida Statutes (1979), required insurance companies to offer uninsured motorist coverage equal to the limits of liability when any policy (contract of insurance) was issued, other than a renewal policy. The addition of a vehicle to an existing policy was held not to constitute the issuance of a "new policy" because there had been no material change in the terms and conditions of the original policy. Kerr v. State Farm Mutual Auto Insurance Co., 434 So.2d 970 (Fla. 5th DCA 1983), rev. den., 441 So.2d 632 (Fla. 1983), held that the substitution of a wife's name for that of her deceased husband's as named insured on an existing policy of insurance was not such a material change as to constitute the issuance of a "new policy." Section 627.727(1), Florida Statutes (1981), now provides that uninsured motorist coverage need not be offered and rejected in connection with a renewal policy "or any other policy which extends, changes, supersedes, or replaces an existing policy". Thus, it is now clear that an amendment or endorsement to an existing policy does not require a new offer of uninsured motorist coverage regardless of whether the change constitutes the issuance of a "new policy." Nonetheless, the issue in the instant case is identical to the issue in Sentry Insurance A Mutual Company v. McGowan: what changes in an existing policy constitute the issuance of a new contract of insurance subject to statutory provisions enacted after the issuance of the original policy. In the instant case, the addition of a driver (James Gray) to an existing policy of insurance did not in any material way change the terms and conditions of the existing policy and the 1980 amendment to section 627.4132 could not, constitutionally change the obligation of the insurance company under that existing policy.
Appellee relies on United States Fire Insurance Co. v. Van Iderstyne, 347 So.2d 672 (Fla. 4th DCA 1977). Van Iderstyne stated three possible ways of interpreting an endorsement to an existing policy:
a. The endorsement relates back to the date of the issuance of the original policy... . b. issuance of the endorsement constitutes a reissuance or redelivery of the entire policy... . c. issuance of the endorsement constitutes issuance of a severable and independent contract of insurance... .
Id. at 673.
The Van Iderstyne court adopted the view that the endorsement constitutes the issuance of a severable and independent contract of insurance.
Assuming that the endorsement which added James Gray as an additional named driver to Richard Gray's policy of insurance constituted the issuance of a separate and severable contract and further assuming that under section 627.412(1), Fla. Stat., the provisions of section 627.4132 as amended in 1980, were incorporated into every uninsured motorist insurance policy issued after October 1, 1980, and were incorporated into the new "separate and severable contract" of insurance issued to James Gray and resulted in providing him with "stacked" coverage under all applicable *220 UMC policies if he were injured, nevertheless, in this instant case it is not James Gray who was injured by the underinsured motorist. Nancy Gray was the injured insured and she was covered under the original policy issued under the anti-stacking statute. Nancy Gray's policy and the statutes incorporated into that policy do not permit her to stack uninsured motorist coverage and the issuance of a "separate and severable contract" to James Gray should not be used as a device to allow an amendment to section 627.4132 to impair the rights of the insurance company with respect to Nancy Gray.[2]
Thus, the mere addition of another person on a policy, like the addition of a vehicle, is not a reissuance of the whole policy.
Section 627.727(2), Florida Statutes (1981), provides:
The limits of uninsured motorist coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, or such lower limit complying with the company's rating plan as may be selected by the named insured, but in any event the insurer shall make available, at the written request of the insured, limits up to $100,000 each person, $300,000 each occurrence, irrespective of the limits of bodily injury liability purchased, in compliance with the company's rating plan.
Nancy Gray's policy with Metropolitan provides limits of uninsured motorist coverage lower than the limits of bodily injury coverage in that the uninsured motorist coverage is limited to $50,000 per person or $100,000 per occurrence while the bodily injury coverage is $100,000 with no per person limitation. § 627.727(2) permits an insurer to issue a policy with limits of uninsured motorist coverage lower than the limits of liability coverage provided the insured knowingly selects the lower limits. American Fire & Indemnity Co. v. Spaulding, 442 So.2d 206 (Fla. 1983); Kimbrell v. Great American Insurance Co., 420 So.2d 1086 (Fla. 1982).
However, the insured did not assert in the pleadings in the action for declaratory judgment that the insured selected the uninsured motorist coverage in a lesser amount than that which the insurer was required to make available without knowledge that the insured was legally entitled to uninsured motorist coverage in the greater amount of per person coverage provided by the bodily injury liability coverage. Therefore the issue relating to the per person limitation difference between the liability coverage and the uninsured motorist coverage was not, and is not, properly presented for adjudication in this case.
REVERSED AND REMANDED for proceedings consistent with this opinion.
DAUKSCH, J., concurs in conclusion only.
SHARP, J., dissents with opinion.
SHARP, Judge, dissenting.
I dissent in this case because I think the October 1, 1980, amendment to the anti-stacking *221 statute, section 627.4132, Florida Statutes (1981),[1] is applicable to the insurance policy in this case because an additional driver was added to the policy by endorsement dated December 18, 1980. In United States Fire Insurance Company v. Van Iderstyne, 347 So.2d 672 (Fla. 4th DCA 1977), the court held that the addition of a vehicle to an insurance policy by endorsement after the date an insurance statute was amended triggered application of the amendment to the policy, which pre-dated the amendment. I can see no material distinction between adding a driver as opposed to adding a vehicle. Therefore, I would conclude that the Grays can stack their uninsured motorist coverage.
I do not think Sentry Insurance A Mutual Company v. McGowan, 425 So.2d 98 (Fla. 5th DCA 1982), or Maxwell v. United States Fidelity and Guaranty Company, 399 So.2d 1051 (Fla. 1st DCA 1981), are controlling. Both cases involve the issue of whether a separate or a material change to a policy occurred so as to trigger the waiver requirements of section 627.727, Florida Statutes (1977) and (1979). The application of a changed statute, however, does not require the finding that a separate or new policy was issued, or that a material change was made. The mere renewal of an insurance policy constitutes a sufficient basis to apply an amended statute. See, e.g., Van Iderstyne. In contrast, policy renewals do not trigger the rejection statute.[2] Clearly, the legislature and the courts do not equate the two issues. Nor should we.
Here the issue is whether the insurance policy and the endorsement are interrelated and interdependent so that the issuance of the endorsement updates the entire policy. If so, the current statute should apply to the whole policy. There is no question in this case but that the endorsement and the policy are but one contract for insurance. The endorsement adds a vehicle, but the policy itself establishes the primary terms of coverage.
Further, I think there is no question but that Metropolitan's limitation of its uninsured motorist coverage to fifty thousand dollars ($50,000.00) per person violates section 627.727(2)(a) and (b), Florida Statutes (Supp. 1982).[3] This statute requires that *222 the uninsured motorist coverage be as broad as the bodily injury and property damage provision in the insurance policy. Metropolitan's bodily injury coverage under this policy is up to one hundred thousand dollars ($100,000.00) per occurrence, with no per person limit. It follows that the uninsured motorist coverage under this policy cannot be reduced by a per person limit.
For the reasons expressed in this opinion, I would affirm the summary final judgment.
NOTES
[1] Ch. 80-364 § 1 Laws of Fla.
[2] Compare Gulf American Fire and Casualty Co. v. McNeal, 115 Ga. App. 286, 154 S.E.2d 411 (1967), with Van Iderstyne. In McNeal, there was, prior to a statutory change, pre-existing insurance coverage as to cars number one and number two. The statutory change required uninsured motorist protection in any automobile liability policy issued subsequent to the date the statute took effect. After the statute took effect the McNeals obtained an endorsement adding car number three to their policy. The statutory definition in Georgia of the word "policy" included endorsements, thus, the court held that as to car number three there was uninsured motorist coverage. However, the court stated that "under the constitutional prohibition against impairing the obligation of contracts, the 1964 Act did not and could not affect the pre-existing insurance coverage as to car number one and car number two." Id. 154 S.E.2d at 416. See also Wells v. Detroit Automobile Inter Insurance Exchange, 29 Mich. App. 235, 185 N.W.2d 147 (1970) (holding that an amendment to a policy in existence prior to the effective date of a statute requiring uninsured motorist coverage, which substituted insured automobiles, did not incorporate the new statute because to do so would be an unconstitutional impairment of the obligation of the contract).
[1] an insured or named insured is protected by any type of motor vehicle insurance policy for liability, personal injury protection, or other coverage, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident. However, if none of insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with applicable coverage. Coverage on any other vehicles shall not be added to or stacked upon that coverage. This section shall not apply:
(1) To uninsured motorist coverage.
§ 627.4132(1), Fla. Stat. (1981).
[2] Section 627.727(1), Florida Statutes (1981), provides in part:

Unless the named insured, or lessee having the privilege of rejecting uninsured motorist coverage, requests such coverage in writing, the coverage need not be provided in or supplemental to a renewal policy, or any other policy which extends, changes, supersedes, or replaces an existing policy issued to him by the same insurer, when the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer. Each insurer shall at least annually notify the named insured of his options as to coverage required by this section.
[3] Section 627.727(2), Florida Statutes (Supp. 1982), provides:

(a) The limits of uninsured motorist coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, or such lower limit complying with the rating plan of the company as may be selected by the named insured; but in any event the insurer shall make available, at the written request of the insured, limits up to $100,000.00 each person and $300,000.00 each occurrence, irrespective of the limits of bodily injury liability purchased, in compliance with the rating plan of the company.
(b) In addition, the insurer shall make available, at the written request of the insured, excess underinsured motor vehicle coverage, providing coverage for an insured motor vehicle when the other person's liability insurer has provided limits of bodily injury liability for its insured which are less than the damages of the insured person purchasing such excess under-insured motor vehicle coverage. Such excess coverage shall provide the same coverage as the uninsured motor vehicle coverage provided in subsection (1), except that the excess coverage shall also be over and above, but shall not duplicate, the benefits available under the other person's liability coverage. The amount of such excess coverage shall not be reduced by a setoff against any coverage, including liability insurance. An insurer shall not provide both uninsured motor vehicle coverage and excess underinsured motor vehicle coverage in the same policy.