William L. GROOVER, Jr., and wife, Melanie Groover, Individually, and William L. Groover, Jr., as next friend of Janet Carole Groover and Janet Carole Groover, Individually, Plaintiffs-Appellees,

v.

William Earl TORKELL, Jr., and United Services Automobile Association, Defendants-Appellants.

Court of Appeals of Tennessee, Middle Section, at Nashville.

June 25, 1982.

Permission to Appeal Denied by Supreme Court Oct. 25, 1982.

James M. Doran, Jr., Manier, White Herod, Hollabaugh & Smith, P.C., Nashville, for defendants-appellants.

James W. Cameron, III, Ben C. Fordham, Tune, Entrekin & White, Nashville, for plaintiffs-appellees.

## OPINION

CANTRELL, Judge.

In this action for uninsured motorist benefits the trial court directed a verdict for the plaintiff on the question of whether the insurance company gave him an opportunity to purchase more than the minimum of uninsured motorist coverage and, after a jury verdict adverse to the plaintiff on the

question of whether he would have purchased any more than the minimum coverage had he been given the opportunity, the trial judge granted judgment notwithstanding the verdict and entered a judgment for the plaintiff for the full amount of the liability coverage in his policy. These actions of the trial judge are the subject of the issues raised on appeal.

William L. Groover, Jr. brought this action against the United Services Automobile Association, alleging that the company violated T.C.A. § 56-7-1201 by failing to provide him an opportunity to purchase higher than minimum uninsured motorist coverage. This action was joined in the trial court with one filed by Mr. Groover against the uninsured driver but the trial court ordered separate trials.

At the trial of this action the Circuit Judge directed a verdict in favor of Mr. Groover under T.C.A. § 56-7-1201 which provides in pertinent part:

> Effective September 1, 1974, every insured purchasing or renewing a policy of insurance under the provisions of the first paragraph of this section shall be provided an opportunity to also purchase uninsured motorist insurance limits greater in amount than the requirements of § 55-12-107.

The Court found that USAA had failed to provide Mr. Groover with an opportunity to purchase higher than the minimum uninsured motorist limits. The case went to the jury on the issue of damages only. The trial court instructed the jury that Mr. Groover had the burden of proof as to damages and asked the jury to report on two questions: (1) Whether Mr. Groover would have purchased higher uninsured motorist coverage had it been offered to him; and (2) if so, how much would he have purchased? The jury returned a verdict for the defendant USAA on the first question which dispensed with the need to return a verdict on the second one.

Mr. Groover appealed the case to this Court. This Court in a written opinion found that the case was not ready for appeal under Rule 3, Tennessee Rules of Appellate Procedure, since the issue of liability as to the uninsured motorist had not been disposed of in the court below. The Court remanded the case to the lower court to await the disposition of the lawsuit involving the uninsured driver.

On remand the trial court granted Mr. Groover's motion for a judgment, notwithstanding the verdict on the issue of whether he would have, in fact, secured a higher coverage for uninsured motorists if he had been given the opportunity. The court entered a judgment for the full amount of the liability coverage contained in Mr. Groover's policy.

■ The Insurance Company's first issue on appeal concerns the Court's action in directing the verdict for Mr. Groover on whether he was given an opportunity to purchase increased uninsured motorist benefits.

We are of the opinion that this issue has merit and it was error for the trial court to direct a verdict on this question. As the statute quoted above indicates, all that is required is that the insurance company "provide an opportunity" to purchase increased coverages for uninsured motorists. Arguably, all that the statute requires is that the insurance company provide such coverages if the policyholder demands them. However, the statute has been construed in two cases before this Court, *Cox v. State Farm Mutual Automobile Insurance Co.,* Tenn.App. (filed Nov. 30, 1979 at Nashville), and *Cook v. United States Fidelity & Guaranty Co.,* Tenn.App. (filed Feb. 9, 1980 at Nashville). In *Cox,* the Court said:

> The 1974 amendment requires that the insurance company provide the insured an "opportunity" to purchase higher limits of uninsured motorist coverage. The amendment requires more than that the insurance company make available uninsured motorist coverage in excess of the minimum limits although a rejection by the insured is not required. An opportunity must be given, and the burden of proof is upon the insurance company to show that the opportunity was given.

The Court then went on to discuss the facts of that case which showed that the plaintiff, a man of limited reading ability, was not given sufficient notice that increased coverage was available because he was not furnished a brochure prepared by the company for that purpose. The Court concluded:

It is apparent that plaintiff did not have sufficient information from the computer premium notice alone to understand that he could purchase excess uninsured motorist limits. For him to have the necessary information under the facts at bar, it was necessary that he have the brochure.

In *Cook*, the Court found that the plaintiff on at least four occasions had received a premium notice with the following language printed at the bottom: "ADDITIONAL UNINSURED MOTORIST COVERAGE IS AVAILABLE. PLEASE CONTACT YOUR AGENT FOR DETAILS." This information, according to the Court, was sufficient to satisfy the statutory requirement that the insured be given an opportunity to purchase higher limits of uninsured motorist coverage. The Court went on to say:

That plaintiff understood that higher limits of uninsured motorist coverage could be obtained is apparent from the above testimony. In view of plaintiff's testimony, the fact that defendant might have chosen another method of informing plaintiff of her opportunity to purchase higher limits of uninsured motorist coverage or that defendant did, in fact, send out a "stuffer" containing a more detailed explanation of the coverage to holders of policies which, unlike plaintiff's, were not directly billed from defendant is of no consequence. Defendant, under the facts at bar, offered plaintiff the "opportunity to also purchase" higher limits of uninsured motorist insurance as required by T.C.A. § 56–1148. [currently T.C.A. § 56–7–1201]

From these two cases we conclude that if the plaintiff knew that uninsured motorist coverage in amounts above the minimum required by law could be purchased at the time of purchasing a new policy or making a renewal of an existing policy, or at the time of any other policy change, the statute has been complied with.

Relevant to that question there is testimony in the record from which the jury could have concluded that the plaintiff had the knowledge required to elect to purchase higher uninsured motorist coverage if he so desired. The proof showed that in the fall of 1975 the plaintiff contacted USAA and requested a rate quotation. In response to this request USAA mailed Mr. Groover a rate "package" on September 8, 1975. The package contained a rate "jacket" which describes various company and coverage features. Uninsured motorist coverage is one feature mentioned on the jacket as follows:

Uninsured motorist coverage protects against loss due to personal injury to the insured and family members caused by an uninsured or hit-and-run driver of another vehicle. When a limit higher than the minimum uninsured motorist, excess uninsured motorist coverage, is purchased, under-insured motorist protection is included at no additional charge. Under-insured motorist coverage provides protection if you are injured by another person who is insured for bodily injury limit liability, but whose bodily injury limits are inadequate to compensate you for your losses.

The rate "package" also includes a brochure which specifically discusses uninsured motorist coverage. That brochure, described in the record as Form 2193, explains uninsured motorist coverage, describes the insurance requirements of the state, discusses the available uninsured motorist coverage options, recommends higher limits, and actually shows the insured how to order higher limits. Form 2193 states:

If your Bodily Injury (BI) liability limits are above the required minimum, you have the option to increase your UM limits up to the BI limits in your policy. For example, if your State's Financial Responsibility Law requires you to carry a

minimum BI liability limits of $10,000 (per person)/20,000 (per occurrence) and you carried our recommended BI liability limits of $100,000/$200,000, you could increase your UM to any limits available up to $100,000/$200,000.

Mr. Grover purchased a USAA policy in February 1976 for an initial term of one year. USAA mails its insured a renewal notice sixty days prior to the renewal date of the policy under the Company's standard practice. That notice would have gone to Mr. Groover in Georgia in late December 1976 or early January 1977. Form 2193 is included in the renewal notice. A renewal policy was mailed to Mr. Groover approximately twenty days prior to the actual renewal date. The computer system the company uses for mailing notices and policies will not process and mail a renewal policy unless it has processed and mailed a renewal notice. Mr. Groover does not recall whether he received a renewal notice when he resided in Georgia.

Mr. Groover moved his family to Franklin, Tennessee in June of 1977 and notified USAA of his change of address in October of that year. USAA cancelled the Georgia policy and issued a Tennessee policy having essentially the same coverages for the remaining four months of that policy period.

There is proof in the record that according to the custom of USAA approximately sixty days prior to February 28, 1978 the company would have mailed to Mr. Groover a renewal notice with a revised 2193 Form recommending that he increase his uninsured motorist limit.

In September 1978, an uninsured motorist seriously injured Mr. Groover's daughter, Janet. The parties stipulated at the trial that she was totally and permanently disabled and that her medical expenses exceeded $100,000.

The above facts concerning the notices given to Mr. Groover, the mailing of the forms, and the inclusion of the forms in the mailings are not conclusively shown by the proof. He testified that he did not recall receiving any notification that he could purchase higher uninsured motorist coverage.

There is in the record, however, testimony describing USAA's mailing procedures. The testimony showed that an employee in the mail room reads the catalogue of form numbers attached to the renewal and checks a manual to determine which forms, brochures and papers to include with the renewal notice. This employee gathers the necessary papers, takes them to an employee who operates a folding machine. After the papers are folded the employee carries them to another employee who operates the stuffing machine. That employee also checks the forms and catalogue numbers and reads the procedures manual to make certain that he has collected and included the correct forms. Finally, the mailings are inserted, stamped, and taken to the loading dock where the Postal Service collects them.

From all of the above evidence in the record we conclude that whether Mr. Groover received the proper notice so that he had the opportunity to secure higher coverages was a question for the jury.

■ It is true that there is no direct evidence that any of the notices were mailed to him. However, evidence that an act was customarily done under like circumstances will be received as evidence that it was done on the particular occasion. *Whittemore v. Lockheed Aircraft Corp.,* 65 Cal.App.2d 737, 151 P.2d 670 (1944). *See State v. Wadsworth,* 210 So.2d 4 (Fla.1968).

Proof of the existence of the person's habit or the custom of the business may be made by testimony of a witness to his conclusion that there was such a habit or practice. It also may be made by evidence of specific instances, though these latter would be subject to the judge's discretion to require that the instances be not too few or too many, and that the time be near and the circumstances be sufficiently similar.

McCormick on Evidence § 195 (1972). Therefore there was evidence in the record from which the jury could conclude that the plaintiff received notices conveying to him the information which would have made increased limits available.

■ The appellee contests the introduction of any evidence of what was sent to the plaintiff in Georgia because that is irrelevant to the particular inquiry. We disagree. As we have indicated, if the plaintiff possessed the knowledge that he could purchase insurance covering damage by uninsured motorists in amounts in excess of the minimum required by state law, regardless of where he received this information, he was given an opportunity to purchase it.

■ The appellee also asserts that since the insurance company admits that the notice of availability was not sent when the Georgia policy was replaced by the Tennessee policy, that was a violation of the statute for which the insurance company is liable. However, we are of the opinion that since the loss did not occur within the policy period covered by the renewal in October of 1977, the failure of the insurance company was harmless. The policy first issued in Tennessee had an expiration date in February 1978. If the loss occurred under a subsequent policy after which the insured had been given the opportunity to purchase increased coverage, then there was no loss connected with the failure of the insurance company to make higher limits available in October 1977.

■ The trial judge charged the jury that the insured had the burden of proof to show that he would have purchased the higher limits if he had been given the opportunity to do so. In the opinion from this Court remanding the case this Court laid down a rule relevant to that issue. The Court said in its former opinion:

The first issue is whether the Trial Judge should have determined as a matter of law that, upon a finding that the defendant insurer had failed to properly notify the assured of the availability of uninsured motorist coverage, the insurer became liable to the insured for uninsured motorist coverage to the same extent as its liability coverage. This should be the rule unless the defendant insurer is able to prove to the satisfaction of the finder of fact that, even if the statutory offer had been made, the insured would

have refused or limited the amount of uninsured motorist coverage.

The second issue is whether the Trial Judge should instruct the jury that the plaintiff has the burden of proving that he would have purchased uninsured motorist coverage if offered. In ordinary circumstances, what the attitude of the insured might have been on a former occasion is subjective in the extreme. Ordinarily a finder of fact ought not to be put to the pains of making a decision upon such subjective speculation. The decision, if made, should be based upon facts which demonstrate forceably that the insured could not reasonably have been expected to accept the offered coverage. This policy would be implemented by indulging a presumption that the full coverage would have been accepted in the absence of satisfactory evidence to the contrary. The effect of such a presumption would be to shift the burden to the insurer where insufficient notice was given and to require satisfactory evidence to overturn the presumption.

Since it should be presumed that plaintiff would have purchased the insurance if offered, any plea of unwillingness on his part to purchase would be in the nature of an affirmative defense as to which the defendant should have the burden of proof. 78 C.J.S., *Sales* § 531, p. 210.

*Groover v. Torkell,* Tenn.App. (filed Feb. 27, 1981 at Nashville) 4–5.

■ Although we conclude, in accordance with the Court's former opinion, that the trial judge's instruction on the burden of proving such a case was erroneous and that the issue should be retried, we are of the opinion that it was error for the trial judge to grant judgment notwithstanding the verdict on that issue. There is evidence in the record that Mr. Groover purchased the minimum no-fault type of coverage required by Georgia law at the time he purchased his first policy. He was at that time quoted a premium for uninsured motorist coverage of $10,000 per person, $20,000 per occurrence, and the jury could have con-

cluded that he was on notice that higher limits were available and he did not choose to purchase them. He could have purchased $95,000 of no-fault insurance but bought only the state's minimum no-fault coverage of $5,000. He purchased the maximum deductible on his collision insurance coverage. We think that that is enough evidence to make a jury issue on what Mr. Groover would have purchased had he been given the opportunity. A post-trial motion for the entry of judgment n.o.v. must be gauged by the usual rules relating to directed verdicts. *Holmes v. Wilson*, 551 S.W.2d 682 (Tenn.1977). Therefore, since there is evidence in the record from which the jury could conclude that Mr. Groover would have limited or completely ignored the opportunity to purchase higher limits, it was error for the trial judge to grant a judgment notwithstanding the verdict.

█ The appellee has raised two additional issues alleging that the conduct of the defendant in this case amounted to a violation of the Tennessee Consumer Protection Act of 1977, T.C.A. § 47–18–101 et seq., and that the defendant's conduct in this case amounted to a constructive fraud.

The Tennessee Consumer Protection Act declares unlawful any "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." T.C.A. § 47–18–104. However we do not think that under the facts in this record the defendant has committed acts which are declared unlawful by that code section. The appellee asserts that the failure to disclose constitutes a deceptive practice. However, the concept of "deceptive" carries with it an element of intent which we do not find present in this case. If the defendant failed to disclose the availability of the insurance in question, it was an innocent mistake and not intended to deceive the plaintiff. We think that is the only reasonable conclusion to be drawn from the evidence in the record.

We are likewise of the opinion that the proof does not establish a cause of constructive fraud against the defendant insurance company. The Court of Appeals, in *Maxwell v. Land Developers, Inc.*, 485 S.W.2d 869 (Tenn.App.1972), described a constructive fraud in this manner.

Constructive frauds are acts, statements or omissions, which operate as virtual frauds on individuals, or which, if generally permitted, would be prejudicial to the public welfare, and are not clearly resolvable into mere accident or mistake, and yet may have been unconnected with any selfish evil design, or may amount, in the opinion of the person chargeable therewith, to nothing more than what is justifiable or allowable. Gibson's Suits in Chancery, 5th Ed., Vol. II, § 982, p. 217.

*Id.* at 874–75.

As we indicated previously, we think the only conclusion that can be drawn from reading this record is that any failure on the part of the insurance company to notify Mr. Groover was a result of an accident or mistake.

In addition, a finding of a constructive fraud could only be made after concluding that Mr. Groover was not given the opportunity to purchase the increased coverage described above. If the jury concludes that that was actually the case, then Mr. Groover has established his cause of action. To say that that also amounts to a constructive fraud is redundant and adds nothing to the available remedies of the plaintiff.

For all of the above reasons we are of the opinion that the judgment entered by the trial judge below should be reversed and the cause remanded to the Circuit Court of Williamson County for a new trial. The costs on appeal are taxed to the appellee.

REVERSED AND REMANDED.

TODD, P.J. (M.S.), and CONNER, J., concur.