CORONET INSURANCE CO., Plaintiff-Appellant, v. TIMOTHY SOLARZ *et al.*, Defendants-Appellees.

First District (1st Division)   No. 84—2703

Opinion filed April 14, 1986.

Fisch, Lansky & Greenburg, of Chicago (Morris A. Haft, of counsel), for appellant.

Gerald Eisen, of Niles, for appellees.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Coronet Insurance Company (Coronet), brought a declaratory judgment action to determine whether it was obligated to provide coverage for an accident involving the defendants. Both Coronet and the defendants thereafter filed cross-motions for summary judgment. Following a hearing, the trial court denied Coronet's motion for summary judgment and granted summary judgment in favor of defendants, declaring as a matter of law that coverage was provided. Coronet appeals the ruling. For the following reasons, we affirm.

The following factual scenario is gleaned from the undisputed evidence. Defendant Timothy Solarz was insured under an automobile liability insurance policy issued by Coronet having an expiration date of March 17, 1981. The policy insured only a 1973 Ford Mustang owned by Solarz. On March 7, 1981, 10 days prior to the expiration date of the policy, Solarz purchased a second automobile, a 1969 Ford Mustang. On March 11, 1981, Solarz informed Coronet that he wished to renew the coverage provided under his current policy, but did not mention the 1969 Mustang. On March 12, 1981, Coronet received a premium from Solarz, and his policy was renewed to extend until September 17, 1981.

On March 12, 1981, Solarz, while driving the 1969 Mustang, was involved in a collision with a vehicle driven by defendant Ammett Pol-

lice. On April 6, 1981, Solarz sent Coronet a letter by certified mail requesting that the 1969 Mustang be added to the policy. This vehicle was added to the policy by an endorsement effective April 9, 1981.

The issue raised by the cross-motions for summary judgment was whether the 1969 Mustang qualified for coverage as an "owned automobile" under Coronet's policy. That policy provides that Coronet will "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury \*\*\* arising out of the ownership, maintenance or use of the owned automobile \*\*\*." The trial court determined as a matter of law that coverage was provided for the 1969 Mustang at the time of the occurrence. The court therefore entered an order granting defendants' motion for summary judgment and denying Coronet's summary judgment motion.

■ In reviewing the propriety of the trial court's ruling, we initially observe that contracts of insurance are governed by the same principles which apply to other types of contracts. (*Management Support Associates v. Union Indemnity Insurance Co.* (1984), 129 Ill. App. 3d 1089, 473 N.E.2d 405.) As such, all of the provisions of an insurance contract should be read together, rather than in isolated parts, to interpret it. (*U.S. Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 429 N.E.2d 1203.) The words of the policy should be interpreted in accordance with their plain and ordinary meaning. (88 Ill. 2d 1, 429 N.E.2d 1203.) It is further held that any ambiguities in insurance contracts should be construed liberally and most strongly in favor of the insured and strictly against the insurer who was the drafter of the instrument. *Murphy v. Peterson* (1984), 129 Ill. App. 3d 952, 473 N.E.2d 480.

With these principles in mind, we turn to the language of the policy at hand. The policy provides that for purposes of coverage, an "owned automobile" is as follows:

> "(b) A private passenger, farm or utility automobile, ownership of which is acquired by the named insured during the policy period, provided, \*\*\*
>
> (2) The company insures all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition, and the named insured notifies the company within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobiles \*\*\*."

There is an additional section contained under the conditions portion of the policy which provides in pertinent part:

"Premium \*\*\* if the named insured acquires ownership of an additional private passenger, farm or utility automobile, he shall inform the company in writing within thirty (30) days following the date of its delivery of his election to make this policy applicable to such owned automobile. Any premium adjustment necessary shall be made as of the date of such change or acquisition in accordance with the manuals in use by the company. The named insured shall, upon request, furnish reasonable proof of the number of such automobiles under the description thereof."

■ It is clear from the plain language of these provisions that the insured has 30 days after acquiring an additional automobile to notify the carrier and obtain coverage as of the date of acquisition. Here, Solarz acquired the 1969 Mustang on March 7, 1981, and notified Coronet of the acquisition on April 6, 1981. As such, Solarz complied with the 30-day time limit and, under the terms of the policy, was entitled to coverage for the newly acquired vehicle.

As the trial court noted, the defendants' position in this case finds support in other cases which have liberally construed similar 30-day provisions. (See, *e.g., Hall v. State Farm Mutual Automobile Insurance Co.* (D.S.C. 1966), 268 F. Supp. 995, *aff'd* (4th Cir. 1967), 378 F.2d 371; *Brown v. Security Fire & Indemnity Co.* (W.D. Va. 1965), 244 F. Supp. 299; *Knotts v. Hardware Mutual Casualty Co.* (La. App. 1973), 272 So. 2d 788.) For example, in *Hall,* the court held that the insured, who did not apply for insurance on his newly acquired automobile within 30 days following its delivery and who never paid an additional premium, was nevertheless covered as to an accident involving that automobile occurring prior to the expiration of the 30-day period. The court stated, "For accidents within the designated [30-day] period, the general rule is that coverage of a newly acquired car automatically arises on acquisition and continues throughout the period." (268 F. Supp. 995, 997.) The court recognized the following rationale for this rule:

"Unless this provision was inserted in the policy for the purpose of deception, and this should not be assumed, it meant something was intended to confer some benefit on the insured. It may reasonably be interpreted as intended to furnish an additional protection on a temporary basis; to be in effect, in appellant's language, 'until a reasonable opportunity was had to notify the company.' This reasonable opportunity was fixed as 30 days. If appellant's (company's) intention was otherwise, this provision should have been eliminated from the policy and such

other intention more clearly expressed. [Citation.]'' 268 F. Supp. 995, 997.

Coronet argues that the insured in this case should not be granted coverage back to the date of acquisition because this particular case involves a policy renewal. Coronet urges that there are actually two separate insurance contracts in this case: the first covering the period during which the 1969 Mustang was purchased and expiring on March 17, 1981, and the second covering the period from March 17, 1981, to September 17, 1981, the period during which the accident occurred. Coronet argues that the first policy cannot provide coverage because the accident did not occur within its policy period, and that the second policy cannot provide coverage because the 1969 Mustang was not acquired within its policy period.

Coronet fails to cite any policy language or case law which provides support for its argument above. Rather, it relies only upon cases that are factually inapposite to the case before us. (*E.g., Coleman v. Atlantic National Insurance Co.* (Fla. App. 1964), 166 So. 2d 620; *Morey v. Richardson* (1977), 142 Ga. App. 742, 236 S.E.2d 871; and *Southern Guaranty Insurance Co. v. Wales* (1969), 283 Ala. 493, 218 So. 2d 822.) Each of these cases involved vehicles which were acquired months or even years prior to the accident or the notice to the carrier. None of the cases cited by Coronet involve the 30-day automatic coverage period overlapping the renewal time, as in the present case. As such, the cases relied on by Coronet are unpersuasive analogy.

We believe that the insured should be granted coverage back to the date of acquisition once he complies with the 30-day provision, without regard to the policy period, where there is a renewal of the policy. There is no language in Coronet's policy that shortens the 30-day grace period when the 30 days run past the renewal date. If Coronet intended to reduce the 30-day period to coincide with a renewal, it should have included express language to that effect in the contract. In the absence of any such language, Coronet is bound by the contract as it is drafted. *Boal v. John Hancock Mutual Life Insurance Co.* (1940), 305 Ill. App. 563, 27 N.E.2d 555.

■ A motion for summary judgment may be granted when the pleadings, depositions and affidavits reveal that there is no genuine factual dispute or controversy and that the moving party is entitled to judgment as a matter of law. (*Lombard v. Elmore* (1985), 134 Ill. App. 3d 898, 480 N.E.2d 1329; Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) Given the language of Coronet's policy, we conclude that the trial court properly determined as a matter of law that the coverage

in dispute is provided and that defendants are entitled to summary judgment.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

CAMPBELL and QUINLAN, JJ., concur.