KAREN MAKELA, Plaintiff-Appellant, v. STATE FARM MUTUAL AUTO-
MOBILE INSURANCE COMPANY, Defendant-Appellant (Central Security
Mutual Insurance Company, Defendant-Appellee).

First District (5th Division)   No. 85—2142

Opinion filed August 22, 1986.

Cohn & Flynn, of Chicago (Charles A. Cohn, of counsel), for appellant Karen Makela.

Victor J. Piekarski and Michael Resis, both of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellant State Farm Mutual Automobile Insurance Company.

Robert D. McHugh, of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

This cause involves an appeal by plaintiff-appellant Karen Makela (plaintiff) and defendant-appellant State Farm Mutual Automobile Insurance Company (State Farm) from the trial court's entry of summary judgment in favor of defendant-appellee Central Security Mutual Insurance Company (Central). Plaintiff was injured in an automobile accident while a passenger in a 1979 Datsun owned by Harry Shank and insured by Central. The other involved vehicle was driven by an uninsured motorist. Plaintiff filed a two-count declaratory judgment action against Central and State Farm, her own insurer. Count I of the complaint seeks a declaration that plaintiff is entitled to $50,000 uninsured-motorist coverage under the language of Shank's policy with Central. In count II, plaintiff seeks coverage of $50,000 based upon Central's failure to comply with the provisions of section 143a—2 of the Illinois Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2), which requires insurers to offer uninsured-motorist coverage up to the limits of bodily injury liability in a policy.

The facts are not disputed. On March 23, 1983, plaintiff was a passenger in a 1979 Datsun, driven by Shank's daughter with his permission. The car was involved in a collision with an uninsured motorist. The Datsun, owned by Shank, was insured by Central. Plaintiff also has uninsured-motorist coverage in the amount of $25,000 under her own automobile policy issued by State Farm. The Central policy issued to Shank originally covered two cars, a 1972 Gremlin and a 1977 Oldsmobile, both of which had 50/100 bodily injury liability coverage. In 1980, Shank signed a form from Central authorizing different limits of uninsured-motorist coverage for the two cars: $50,000 per person and $100,000 per occurrence (50/100) for the Oldsmobile, and the statutory minimum of $15,000 per person and $30,000 per occurrence (15/30) for the Gremlin.

At his deposition, Shank stated that when he purchased the Datsun in 1982, he telephoned his insurance agent and told the agent that he wanted the same coverage on the Datsun that he had on the Gremlin. Shank was not quoted a premium for the Datsun. Shank also stated that he did not know what coverage he had on the Gremlin at the time of the call. He also testified that he never received any information from Central as to what uninsured-motorist coverage in the amount of 50/100 would cost for the Datsun. Subsequently, the uninsured-motorist coverage for the Datsun was 15/30, the same amount as that for the Gremlin. Shank did not recall having signed the 1980 uninsurance form. However, several months later, in an affidavit, Shank remembered that he had received a "dear policyholder" letter explaining the available uninsurance options, which letter was accompanied by a form listing the choices of uninsured-motorist limits. The affidavit further stated that when Shank filled out and signed the form choosing the 15/30 uninsured-motorist coverage for the Gremlin, he understood that he could have chosen coverage in the same amount as his bodily injury coverage, but that he chose not to.

Cross-motions for summary judgment were filed by all three parties, the Shank affidavit being attached to Central's motion. The trial court granted Central's motion for summary judgment on both counts, holding that the limit pursuant to the Shank policy for uninsured-motorist coverage was 15/30. It was also held that plaintiff's State Farm policy was in excess to Shank's Central policy.

On appeal, plaintiff contends that Central failed to offer Shank uninsured-motorist coverage as required by law in connection with the Datsun. She also asserts that the trial court improperly considered the Shank affidavit which contradicted his prior deposition statements, and that entry of summary judgment on both counts was error where count I was not argued or briefed before the trial court. Plaintiff also contends that the language of Shank's policy entitles her to $50,000 in uninsured-motorist coverage. State Farm makes a similar argument concerning Central's failure to offer limits of uninsured-motorist coverage up to the bodily injury liability limits of 50/100 for the Datsun. State Farm contends that section 143a—2 (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2) requires a new offer when a car is added to a multiple-vehicle policy. Central contends that its 1980 offer to Shank was in compliance with section 143a—2 and that the addition of a car was not a new or separate policy which would require a new uninsurance offer. Central also responds that the anti-stacking provision of the Shank policy precludes stacking of the unin-

sured-motorist coverages.

■ All parties apparently agree that the relevant statutory provisions require an insurance carrier to notify an insured of the right to obtain uninsured-motorist coverage up to the limits of the policy limits for bodily injury liability. (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2.) The parties also agree that under the offer requirements delineated by the court in *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 465 N.E.2d 956, Central's 1980 offer of uninsured-motorist coverage for the Gremlin and Oldsmobile was adequate. The *Tucker* holding requires that where the uninsurance offer is made other than on a face-to-face negotiation: (1) it must be commercially reasonable; (2) the limits of optional coverage must be stated in specific rather than general terms; (3) the insurer must intelligently advise the insured of the nature of the optional coverages; and (4) the insured must be advised that the optional coverages are available at a relatively modest increase in premium. 125 Ill. App. 3d 329, 335, 465 N.E.2d 956, 960-61.

The real issue in this case is whether Central should have sent a new offer to Shank in 1982 when he added the Datsun to his policy. Resolution of this issue necessitates interpretation of that portion of the statute providing for the right of an insured to elect or reject additional uninsured-motorist coverage. Section 143a—2(2) provides in part:

> "In those cases where the insured has elected to purchase limits of uninsured motorist coverage which are less than bodily injury liability limits or rejects limits in excess of that required by law, the insurer need not offer in any renewal or supplementary policy, coverage in excess of that elected by the insured in connection with a policy previously issued to such insured by the same insurer unless the insured subsequently makes a written request for such coverage." Ill. Rev. Stat. 1983, ch. 73, par. 755a—2(2).

■ It appears from a plain reading of the statute that if the addition of the Datsun to the policy resulted in a renewal or supplementary policy, there was no need for Central to send a new offer of uninsured-motorist coverage to Shank. On the other hand, if the addition of the Datsun was not a renewal or supplementary policy, as those terms are used in the statute, then Central's failure to send a new offer in 1982 was violative of the statutory requirement of section 143a—2. Such a violation requires that uninsured-motorist coverage at the limit of bodily injury liability coverage, which would be 50/100 in this case, is read into the policy by operation of law. *Tucker v.*

*Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 337, 465 N.E.2d 956, 962.

Therefore, the issue is whether section 143a—2 requires a new offer of uninsured-motorist coverage when a new car is added to an existing policy. In other words, we must determine whether the term "renewal or supplementary policy" as used in section 143a—2 covers the addition of a car or whether that addition constitutes a new policy. In order to determine the legal meaning of this term, as it applies to the present case, it is necessary to examine relevant case law, the policy, and, of course, the statute itself.

Since this is a case of first impression in Illinois, we will first consider the manner in which other jurisdictions have resolved the issue. Florida is the only State to have issued many decisions regarding this specific matter. In 1973, the Florida legislature enacted an uninsurance/underinsurance statute (Fla. Stat. sec. 627.727 (1984)) similar in wording to the Illinois statute in this case. A Florida district court, in *United States Fire Insurance Co. v. Van Iderstyne* (Fla. App. 1977), 347 So. 2d 672, held that the addition of an endorsement covering a new car to an existent policy, with an additional premium charged, constituted a separate and severable contract and the endorsement should have included the mandated coverage. This reasoning was followed in *Hartford Accident & Indemnity Co. v. Sheffield* (Fla. App. 1979), 375 So. 2d 598, wherein an insured lowered her liability limits thus creating an amended declarations page. The court decided that the change in terms and conditions prohibited applying the statutory renewal exception to the amendment and held that a new offer of uninsured-motorist coverage should have been made. (*Cf. United States Fidelity & Guaranty Co. v. Waln* (Fla. App. 1981), 395 So. 2d 121 (substitute automobile does not change policy in a material respect where liability limits do not change, and no new offer is required).) However, other district courts interpreted the same statute regarding rejections of offers in a contrary manner. See *Kerr v. State Farm Mutual Automobile Insurance Co.* (Fla. App. 1983), 434 So. 2d 970 (substitution of wife's name on deceased spouse's policy not a material change); *Sentry Insurance, A Mutual Co. v. McGowan* (Fla. App. 1982), 425 So. 2d 98 (addition of vehicles to existent policy does not require a new rejection of uninsured-motorist coverage).

In 1983, the Florida Supreme Court in *American Fire & Indemnity Co. v. Spaulding* (Fla. 1983), 442 So. 2d 206, considered the issue with respect to several policy changes—addition of a driver and addition of a vehicle—and concluded that the statute does not require

a new offer with every material policy endorsement. The statute instead requires that a rejection of uninsured-motorist coverage or a selection of lower limits must be knowingly made, which is a question for the trier of fact. Florida has subsequently amended its statute to provide that uninsured-motorist coverage need not be offered and rejected in connection with a renewal policy "or any other policy which extends, changes, supersedes, or replaces an existing policy." (Fla. Stat. sec. 627.727(1) (1983).) Thus, Florida courts, by a circuitous route, have concluded that the mere addition of another person or vehicle to an existing policy is not a reissuance of a whole policy. This is so because an endorsement and policy are but one contract for insurance and the policy itself establishes the primary terms of coverage. *Metropolitan Property & Liability Insurance Co. v. Gray* (Fla. App. 1984), 446 So. 2d 216.

Texas courts have also interpreted a statute similar to that of Illinois' as not requiring a new offer of uninsurance coverage with every policy change. The court in *El-Habr v. Mountain States Mutual Casualty Co.* (Tex. App. 1981), 626 S.W.2d 171, held that an endorsement adding a new vehicle did not create a new contract of insurance but rather merged into the original policy and no new offer of uninsurance coverage was necessary. (See also 1 Couch on Insurance 2d sec. 4:36 (rev. ed. 1984).) In Louisiana, the relevant statute states that no new coverage offer is necessary "in or supplemental to a renewal or substitute policy" once the insured has rejected the coverage as to a policy previously issued by the same insurer. (La. Rev. Stat. Ann. sec. 22:1406D(1) (West 1978).) In *Myers v. Thibeaux* (La. App. 1978), 365 So. 2d 266, a plaintiff purchased his original policy in 1962 and rejected uninsured-motorist coverage. Renewal policies were issued until 1973, when the policy was changed to cover a different automobile with different coverages. No new offer of uninsured-motorist coverage was made at that time. The *Meyers* court held that the 1973 policy was merely a renewal and/or substitute for the original 1962 policy. Tennessee also appears to follow this line of reasoning in the manner its courts interpret its statute which requires that insureds be given an opportunity to purchase higher uninsurance coverage. Tennessee courts require only that the insured possess the knowledge that he could purchase excess insurance; it makes no difference where he received the information as long as an opportunity to purchase it was once relayed to the insured. (*Groover v. Torkell* (Tenn. App. 1982), 645 S.W.2d 403 (insured rejected higher coverage while insured under a Georgia policy; when same insurer issued him a Tennessee policy, no new offer was necessary); see also

*Goode v. Daughtery* (Tenn. App. 1985), 694 S.W.2d 314.) Oklahoma courts, in construing a statute similar to ours, hold that the addition of a new car with different coverage to an existing policy is only a renewal, especially since no new application was filled out for a new policy. *Hicks v. State Farm Mutual Automobile Insurance Co.* (Okla. 1977), 568 P.2d 629.

This court has found at least two jurisdictions that require a new offer of uninsured-motorist coverage when an automobile policy is changed. A Delaware court in *Arms v. State Farm Mutual Automobile Insurance Co.* (Del. Super. 1983), 465 A.2d 360, *aff'd* (Del. 1984), 477 A.2d 1060, held that any qualitative modification in a policy constitutes replacement rather than renewal, and citing volume 13A of Appleman, Insurance Law & Practice, section 7648 (1976), noted that the concept of renewal addresses itself solely to the temporal aspect of coverage, rather than to terms. The *Arms* court so held in respect to a policy that changed cars, term of coverage, the amount of premiums, and the amount of coverage. Similarly, the Arkansas Supreme Court has held that the substitution of one vehicle for another required a new offer under a statute that expects uninsured-motorist coverage to be issued or rejected any time automobile liability insurance is "delivered or issued for delivery in this State." Ark. Stat. Ann. sec. 66—4003 (1980); *Lucky v. Equity Mutual Insurance Co.* (1976), 259 Ark. 846, 537 S.W.2d 160.

The definitive case in Illinois regarding offers of uninsurance coverage is *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 465 N.E.2d 956. The four-part *Tucker* test (discussed above) used to determine whether an adequate offer has been made so as to intelligently advise the insured of the additional coverage available is the same test articulated by the Minnesota Supreme Court in *Hastings v. United Pacific Insurance Co.* (Minn. 1982), 318 N.W.2d 849. Although we could find no Minnesota case that addressed the precise issue at bar, we note that Minnesota courts have subsequently interpreted the *Hastings* rule as requiring an insurer to make only one meaningful offer (*Tibbals v. State Farm Mutual Automobile Insurance Co.* (Minn. App. 1985), 370 N.W.2d 679 (only one offer required even though insureds applied for insurance on three separate occasions)), and that specific premium cites are not required as long as the insured realizes the costs for uninsurance coverages are modest. *Squier v. Milwaukee Mutual Insurance Co.* (Minn. App. 1984), 356 N.W.2d 832; see also *Randall v. State Farm Mutual Automobile Insurance Co.* (Minn. 1983), 335 N.W.2d 247.

In summary, it is apparent that other jurisdictions, applying simi-

lar statutes to the facts similar in the present case, have arrived at contrary conclusions: Florida, Texas, Oklahoma, Louisiana, and possibly Tennessee and Minnesota, do not require a new offer when changes are made to an already existing policy for which an adequate offer of uninsurance coverage had earlier been made; Arkansas and Delaware do require a new offer. It is of interest that only one jurisdiction—Florida—has decided many cases involving the present issue and that up until its supreme court considered the issue, its district courts could not agree on the proper interpretation of the "rejection" statute.

■■ We now turn to an examination of Illinois law concerning insurance policies. It is well settled that insurance is a personal contract; it does not run with the insured property unless expressly so stated. (*Lindley v. Orr* (1898), 83 Ill. App. 70, 73-74.) It is not the property that is insured, but rather the risk of loss to the insured. (*Patterson v. Durand Farmers Mutual Fire Insurance Co.* (1940), 303 Ill. App. 128, 138, 24 N.E.2d 740, 744.) Moreover, an insurance contract includes the printed form policy, declarations, and any endorsements, and all parts are to be considered together to ascertain the meaning, purpose, and intent of the parties. (*Webster v. Inland Supply Co.* (1936), 287 Ill. App. 567, 574, 5 N.E.2d 849, 853.) It is also well established that in the law of contracts, the intention of the parties control and if such intent is clear, courts have no power to change that intent. 43 Am. Jur. 2d *Insurance* sec. 272 (1982).

In the case at bar, the parties contracted to insure any car on the declarations page, including any replacement, substitute, and additional cars if notice of the change was given to the insurer within 30 days. Proper notice was given in this case. At the time the policy was issued, it is evident that the parties contemplated that it would apply to the Datsun subsequently added by Shank in 1982. Thus, if the insurance contract did not attach to specific vehicles, but rather was personal to Shank in that it insured his risk of loss as a car owner, his intent to have the original policy cover an additional car is clear and unambiguous, and the courts have no power to change the intention of the parties. Furthermore, if the addition of the Datsun to the declarations page, in conformance with the terms of the contract, is considered a change or endorsement, case law considers that a part of the contract.

Further buttressing the view that only one policy exists in this case are decisions in connection with other issues arising out of insurance contracts. This court in *Coronet Insurance Co. v. Solarz* (1986), 142 Ill. App. 3d 880, 492 N.E.2d 914, considered whether an

additional car was covered under an "owned automobile" clause when an accident occurred within the 30-day notice period but before the insured gave notice of the new car to the insurer, even though the policy expired and was renewed before notice of the new acquisition was given. The *Solarz* court rejected the insurer's argument that there were actually two separate insurance contracts instead of a policy renewal as a result of the additional car. (142 Ill. App. 3d 880, 884, 492 N.E.2d 914, 916.) In its ruling, the *Solarz* court also stated that a general rule concerning such clauses is that coverage on a newly acquired car automatically arises on acquisition and continues throughout the notice period. 142 Ill. App. 3d 880, 884, 492 N.E.2d 914, 915-16.

A similar conclusion was reached by the court in *Otto v. Allstate Insurance Co.* (1971), 2 Ill. App. 3d 58, 275 N.E.2d 766. That case involved the question of whether uninsurance coverages on two automobiles in one policy could be stacked. The *Otto* court also rejected the contention that the policy, which had two separate certificates of insurance and different premiums for each car, was actually two separate policies of insurance, and held that there was but one contract of insurance, disallowing stacking of the uninsurance coverage in the same policy. (2 Ill. App. 3d 58, 61, 275 N.E.2d 766, 768; see also *Hanover Insurance Co. v. Cormack* (1979), 78 Ill. App. 3d 368, 396 N.E.2d 1076 (three cars under one policy constitutes one policy as to applicability of separability clause).) This understanding as to what constitutes one policy of insurance finds further support in cases that do allow stacking when uninsured-motorist coverage for multiple vehicles is provided for in separate insurance policies. See, *e.g., Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247.

■ The above case law tends to support Central's assertion that there is but one policy covering three automobiles in the present case. However, a policy of insurance is a contract between the company and a policyholder, the benefits of which are determined by the terms of the policy insofar as those terms are not contrary to public policy. (*Stryker v. State Farm Mutual Automobile Insurance Co.* (1978), 74 Ill. 2d 507, 513, 386 N.E.2d 36, 38.) Therefore, it is necessary to construe section 143a—2 (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2), taking into consideration the public policy underlying its enactment, to determine whether Central's assertion would contravene that public policy.

It has been consistently held that the purpose of section 143a—2 is "to place the policyholder in substantially the same position he

would occupy *** if the wrongful driver had had the minimum liability insurance required by the Financial Responsibility Act (Ill. Rev. Stat. 1969, ch. 95½, par. 7A—101 *et seq.* [(now Ill. Rev. Stat. 1983, ch. 95½, par. 7—100 *et seq.*)])." (*Ullman v. Wolverine Insurance Co.* (1970), 48 Ill. 2d 1, 4, 269 N.E.2d 295, 297.) In the present case, Central's original offer to Shank resulted in the fulfillment of this legislative policy since Shank did choose the minimum liability required by the Act for the Datsun. However, we must also consider the refinement of public policy as articulated in *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 465 N.E.2d 956. The court in *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 488 N.E.2d 548, discussed *Tucker* and determined that the legislature not only intended that all injured parties would be minimally covered, but that all insureds be given an opportunity to intelligently elect or reject excess uninsured-motorist coverage. (109 Ill. 2d 419, 424-25, 488 N.E.2d 548, 550.) Here there is no doubt that Shank received a sufficient offer in 1980. Initially, during his deposition, Shank did not remember the offer. However, in a latter affidavit, he stated that, after seeing a copy of the letter, he remembered receiving the offer and accompanying information in a "dear policyholder" letter. It is apparent that Shank was aware of the different available coverages since he chose uninsured-motorist coverage in the same amount as the general liability limits (50/100) for the Oldsmobile but only chose the minimum coverage (15/30) for the Gremlin. Whether Shank's intelligent rejection of excess coverage for the Gremlin in 1980 is adequate as to the 1982 addition of the Datsun depends upon the interpretation of the statutory phrase, "the insurer need not offer in any renewal or supplementary policy" (Ill. Rev. Stat. 1983, ch 73, par. 755a—2(2)).

▪ In construing a statutory provision not yet judicially interpreted, a court is guided by both plain meaning of language in the statute as well as legislative intent. (*Allstate Insurance Co. v. Winnebago County Fair Association, Inc.* (1985), 131 Ill. App. 3d 225, 228, 475 N.E.2d 230, 236.) Furthermore, a word having a well-known legal significance will be presumed to have that meaning. (*Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 333, 465 N.E.2d 956, 959.) As indicated in Illinois case law discussed above, the long-standing practice has been to consider multiple vehicles under a policy containing an automatic-coverage clause as one policy. "Renewal" has been defined as "[t]he substitution of a new right or obligation for another of the same nature." (Black's Law Dictionary 1165 (5th ed. 1979).) "Supplementary" is defined as "added as a sup-

plement," and "supplemental" as "that which is added to a thing to complete it." (Black's Law Dictionary 1290 (5th ed. 1979).) Thus, the type of policy here has long been considered a single contract of insurance by Illinois courts. Additionally, it is apparent that pursuant to the above definitions, the Shank policy could be considered either a renewal or supplementary policy. It is also apparent that the legislative intent in enacting section 143a—2 is to assure that a rejection of uninsured-motorist coverage at higher than minimum limits is knowingly made. Since our offer requirement was interpreted by the court in *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 465 N.E.2d 956, by looking to Minnesota law, we think it is reasonable to also follow Minnesota's further interpretation regarding offers so as to require only one meaningful offer from the same insurer to the same insured in connection with a single policy. In the case at bar, the additional car and the policy is one contract of insurance in which the policy itself, including the automatic-coverage provision, establishes the primary coverage.

■ In light of the above discussion, we conclude that the view espoused by Florida courts that the addition of a new car to an existing policy is no more than a renewal of or supplementary to the original policy is the more reasonable interpretation of section 143a—2. We have reached this conclusion for several reasons: (1) the principle that insurance contracts are personal and do not attach to specific vehicles; (2) Illinois case law holding that an insurance contract includes all endorsements, declarations, and the policy; (3) the intent of the parties to have the policy cover additional cars as evidenced by the automatic-coverage provision; (4) the fact that there was no new application of insurance for the additional car; (5) the legal significance of a multiple-car policy as applied by Illinois courts in connection with other insurance issues and the plain meaning of the words "renewal" and "supplementary"; and lastly, (6) the fact that public policy has been implemented since Shank made a knowing choice of uninsured-motorist coverage.

Accordingly, the policy at issue falls within the statutory exclusion for renewal/supplementary policies and no new offer of uninsured-motorist coverage was necessary. To hold otherwise would both contravene the accepted legal understanding of a multiple-car policy with automatic-insurance clauses and would also be likely to create confusion as to exactly when a new offer must be made, *e.g.*, when a car or driver is added or deleted, when coverage is changed, when a replacement or substitute car is involved, etc. Such a contrary interpretation would possibly also affect other areas of insurance law,

such as the different cancellation procedures for new and renewal policies, the stacking of coverages, and most certainly, the application of automatic-coverage clauses—if a new offer must be made, how can a new vehicle be automatically covered if an insurer must send a new offer and wait for its return before knowing what limits of uninsured-motorist coverage are to be applied to the "new" policy.

Although we have stated that the adoption of the Florida construction of a similar statute is the more reasonable course in view of Illinois law concerning policies of insurance, the best course of action would be for our legislature to amend the statute, as did the Florida legislature, so as to eliminate the necessity for judicial interpretation of legislative intent regarding the meaning of renewal or supplementary policies.

Plaintiff next contends that Shank's affidavit, contradicting his prior deposition testimony concerning his nonrecollection of having received Central's 1980 offer of uninsured motorist-coverage, should not have been considered by the trial court in granting summary judgment for Central. First, we note that Shank's affidavit was not contradictory to his deposition. Shank testified that he could not recall the offer; his affidavit stated that after his memory was refreshed by seeing a copy of the "dear policyholder" letter, he remembered the offer and the making of his deliberate choices of coverage limits. The purpose of summary judgment proceedings is to decide questions of law after first deciding that no genuine issue of material fact exists which is to be determined from the pleadings, depositions, affidavits, and exhibits. (*Kusiciel v. LaSalle National Bank* (1982), 106 Ill. App. 3d 333, 338, 435 N.E.2d 1217, 1221.) Since both counts of plaintiff's complaint involved questions of law, *i.e.*, interpretation of an insurance contract and of a statute, and since Shank's affidavit was not a contradiction of his deposition, plaintiff's argument as to this issue is without merit.

Plaintiff also alleges that the trial court improperly entered summary judgment on both counts even though count I was never briefed or argued. In count I, plaintiff asserted a right to recover the highest limit ($50,000) of uninsured-motorist coverage listed on the declarations page on the basis of ambiguity in the language of the policy. However, Central's motion for summary judgment, which was subsequently granted, requested judgment on both counts. A defendant may at any time move for a summary judgment in his favor for all or any part of the relief sought against him. (*Kusiciel v. LaSalle National Bank* (1982), 106 Ill. App. 3d 333, 338, 435 N.E.2d 1217, 1221.) Moreover, construction of an insurance policy presents only a

question of law and is appropriately determined by means of summary judgment. (*State Farm Mutual Automobile Insurance Co. v. Schmitt* (1981), 94 Ill. App. 3d 1062, 1063, 419 N.E.2d 601, 602.) Therefore, the trial court properly granted summary judgment to Central on both counts.

■■ As to plaintiff's ambiguity argument, the policy language which limits the amount of recovery states, "the limit of uninsured motorist insurance shown on the Declaration Page for 'each person' is the maximum we'll pay in Damages for bodily injury to any one person *** [e]ven though You may have more than one car insured with us and separate premiums are charged for each car, the most we will pay for any one accident is the amount shown on the Declaration Page. When Damages are payable under more than one policy we've issued to You, we won't pay more than the highest limit in any one such policy." Another clause in the policy promises to pay uninsured-motorist insurance "because of bodily injuries You suffer while Occupying a Car we insure." Contrary to plaintiff's assertions, the limitation clause clearly states that the highest limit in a policy is applicable only where damages are payable under more than one policy. There is only one policy in this case, thus rendering this provision inapplicable. Read as a whole, the above provisions in tandem with the separate listings of coverages for each of three automobiles on the declaration page unambiguously indicate that coverage is limited to the amount listed for the automobile involved in the accident. Where a clause is unambiguous, there is no need for construction, and the clause may be applied as written. (*Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 423-24, 401 N.E.2d 539, 541.) Accordingly, the trial court's determination that plaintiff is limited to the $15,000 uninsured-motorist coverage listed for the Datsun was proper.

For the above reasons, the entry of summary judgment on both counts in Central's favor is affirmed.

Affirmed.

SULLIVAN, P.J., and PINCHAM, J., concur.