**Virgil D. ARMS, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted Nov. 23, 1982.

Decided Feb. 1, 1983.

Kenneth M. Roseman of D'Angelo, Ciconte & Roseman, Wilmington, for plaintiff.

F. Alton Tybout and Colin M. Shalk of Tybout, Redfearn, Casarino & Pell, Wilmington, for defendant.

O'HARA, Judge.

The instant case confronts the Court on plaintiff's motion for partial summary judgment against defendant-insurer. The claim in issue was precipitated by an April 21, 1979 collision involving plaintiff and resulting from the negligence of an uninsured motorist. At the time of the accident, plaintiff's insurance policy with defendant provided for bodily injury limits of $100,000 per person, $300,000 per accident ("100/300") and uninsured motorist limits of $10,000 per person, $20,000 per accident ("10/20").

Inasmuch as plaintiff's damages exceed the limits of his uninsured motorist coverage, plaintiff seeks review from this Court of his automobile insurance policy with defendant in the hope of increasing the uninsured motorist provision to match the limits of his liability coverage. Specifically, plaintiff cites defendant's purported non-compliance with 18 *Del.C.* § 3902 as a basis for relief.

18 *Del.C.* § 3902, the uninsured motorist statute, requires that every automobile liability insurance policy provide coverage against encounters with uninsured vehicles, if such policy is delivered or issued for delivery in Delaware with respect to motor vehicles registered or principally garaged in Delaware, unless rejected by the insured in writing. 18 *Del.C.* § 3902(a). The statutorily prescribed minimum coverage is 10/20.

Section 3902(b) imposes upon the insurer the duty to offer to its insured the option to purchase additional uninsured motorist coverage up to $300,000, but not exceeding the personal injury limit stated in the basic policy. Failure to comply with § 3902(b) will keep the offer of additional coverage alive, to be elected by the insured at any time, including after the accident. *O'Hanlon v. Hartford Acc. & Indem. Co.,* D.Del., 522 F.Supp. 332 (1981).

However, where the policy in issue is a renewal policy and the option to purchase additional coverage has been articulated by the insurer when issuing the original policy, no subsequent offer is required by the statute. 18 *Del.C.* § 3902. Defendant herein seized upon this exception in opposing the motion for partial summary judgment.

Therefore, the issue reduces itself to whether or not the policy in effect at the time of the collision was a renewal of prior coverage.

Complicating the Court's inquiry is the fact that, between September 27, 1977 and April 21, 1979, plaintiff replaced his automobile several times. During that period, plaintiff and defendant negotiated the following:

1) On September 27, 1977, plaintiff procured insurance coverage on a 1969 Oldsmobile. The policy provided for liability (bodily injury) limits of 100/300 and uninsured motorist limits of 10/20.

2) On October 8, 1978, plaintiff procured insurance coverage on a 1974 Ford Mustang. The policy provided for liability limits of 100/300 and uninsured motorist limits of 10/20. The monthly premium was $98.30.

3) On November 9, 1978, the preceding policy was replaced in favor of coverage on a 1977 Chrysler Cordoba. This policy provided for liability in the amount of 100/300 and uninsured motorist limits of 10/20. The monthly premium was $227.38 and coverage included collision and comprehensive risk, unlike the policy immediately preceding it.

4) On March 27, 1979, the policy issued on November 9, 1978, was renewed for six months. The policy applied to the same vehicle as listed on the aforementioned policy and included the identical coverage. The monthly premium was $261.37.

With respect to the four above-cited insurance policies, defendant contends that each policy issued subsequent to the one dated September 27, 1977, was merely a renewal of the initial coverage; therefore, the duty to offer the option to plaintiff did not attach beyond the offer made in connection with the purportedly original policy. Plaintiff counters that, even if the October,

1978 policy were deemed a renewal of the one issued in September, 1977, the policy obtained in November, 1978 was a replacement and, therefore, he should have been offered the option of increasing his uninsured motorist limits,[1] when *that* policy issued. This Court similarly concludes that an option offer was required at that juncture.

Defined as coverage "based upon and subject to the same terms and conditions as were contained in the original policy," 13A Appleman, *Insurance, Law & Practice,* § 7648 (1976), the concept of renewal addresses itself solely to the temporal aspect of coverage, rather than the terms thereof. Thus, any qualitative modification in the policy constitutes replacement rather than renewal.

Under the preceding analysis, it is clear as a matter of law that neither the November, 1979, nor the March, 1979 policy was a renewal of the coverage issued in September, 1977. The September policy, which insured a 1969 Oldsmobile, was succeeded by an October, 1978 policy on a 1974 Ford Mustang.[2] The disparities in coverage between the October and November policies are numerous with respect to: 1) the vehicle insured; 2) the term of coverage; 3) the premium payment; and 4) the inclusion of collision and comprehensive risk coverage in the latter policy.

Having concluded as a matter of law that the affirmative duty to offer additional coverage arose in connection with the November, 1978 policy, this Court additionally finds that no material issues of fact exist to thwart plaintiff's motion for partial summary judgment. While defendant contends that an offer of additional coverage was made upon issuance of the September, 1977 policy, defendant admits that no such option was articulated in connection with the policies subsequent thereto. This admission is fatal to defendant's position.

1. Plaintiff concedes that the March, 1979 policy was a renewal of the policy issued in November, 1978.

2. The issue of whether the October policy was a replacement or renewal of the preceding policy does not impact this analysis and need not be addressed by this Court.

In addition, defendant maintains that a factual issue arises as to whether the plaintiff would have accepted the higher coverage. A similar argument was dismissed by the Court in *O'Hanlon v. Hartford Acc. & Indem. Co.,* supra, which observed:

> If defendant's arguments were accepted, the insured's default would deprive the insured of his or her right to know and decide, and replace it with the right to have a fact finder later speculate about how the contemplated decision making process would have come out.[3] 522 F.Supp. at 336.

Consistent with the above rationale, this Court declines to entertain any inquiry into plaintiff's probable choice had the required offer been tendered.

Finally, defendants ask this Court to rule that § 3902 applies only to those occasions when the agent and insured have occasion to discuss or review coverages. However, in any age where business transactions are effected with the greatest expediency and choices entertained with a minimum of leisure, to hold as defendant suggests would be to dilute the force and application of the statute and result in an interpretation which the Courts have rightfully resisted.

Accordingly, plaintiff's motion for partial summary judgment is granted and State Farm policy number S424–736–C27–083, issued March 27, 1979, is hereby construed to provide, as a matter of law, uninsured motorist coverage in the amount of 100/300.

IT IS SO ORDERED.

---

**3.** See also *Lumbermans Mutual Casualty Co. v. Carriere,* 170 N.J.Super. 437, 406 A.2d 994 (1979); *Holman v. All Nation Insurance Co.,* Minn.Supr., 288 N.W.2d 244 (1980).