[No. 57416-2.   En Banc.   October 17, 1991.]

BARBARA JOHNSON, *as Guardian, Respondent*, v.
FARMERS INSURANCE COMPANY OF WASHINGTON,
*Appellant.*

*Helsell, Fetterman, Martin, Todd & Hokanson*, by *Pauline V. Smetka* and *Paul E. Murray*, for appellant.

*Mullavey, Prout, Grenley, Foe, Lawless & Dahl*, by *Henry W. Grenley*, for respondent.

GUY, J. — Farmers Insurance Company of Washington appeals a trial court denial of summary judgment to Farmers Insurance and the trial court's grant of summary judgment to Barbara Johnson as guardian for her daughter, Teresa Johnson. Farmers Insurance (Farmers) assigns error to the trial court's ruling that under RCW 48.22.030, a previously valid waiver of underinsured motorist (UIM) coverage by one spouse terminates when the spouses later separate and the *other* spouse becomes the new named insured on the policy.

## FACTS

This case involves a dispute as to the amount of UIM coverage to which Barbara Johnson is entitled under her Farmers automobile insurance policy. Mrs. Johnson claims she is owed a total of $100,000 in UIM coverage, while Farmers contends her UIM coverage totaled $50,000.

Barbara Johnson, who commenced this action, is the mother of Teresa Johnson. Teresa Johnson was seriously injured on June 20, 1986, while a passenger on a motorcycle which crashed into a roadside tree or pole.[1] She was 17 years old at the time of the accident. No other vehicles were involved in the collision, and the driver of the motorcycle, Jeffrey Daneluk, had no insurance.

Motorists who completely lack auto insurance to cover property damage or injuries stemming from their accidents are generally referred to as uninsured motorists. Those who have auto insurance in coverage limits inadequate to cover such damage or injury are called underinsured motorists. In Washington, UIM coverage is auto insurance coverage designated to protect policyholders when they and/or their property are injured by persons who are *either* uninsured or underinsured.

Because of Jeffrey Daneluk's lack of coverage, Barbara Johnson made a claim for her daughter's injuries under the UIM coverage Mrs. Johnson carried on her automobile insurance policy with Farmers, policy 79-2910-73-85. Barbara Johnson's third party liability coverage under this policy was $100,000, and a demand was made upon Farmers for payment under the UIM coverage in this same amount. Farmers agreed that Teresa's injuries came under UIM coverage, but only to a coverage limit of $50,000.

A background in the statutory requirements for waiver of UIM coverage, and then a review of the steps taken by

---

[1] RCW 48.22.030(2) has been interpreted by this court as properly allowing an exclusion from UIM coverage of injuries to the insured while occupying a motorcycle. *See Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 738 P.2d 251 (1987). While the accident in this case did injure a motorcycle passenger, no motorcycle exclusion appears to have been made in the Farmers policy in question.

Barbara Johnson and her spouse, Larry Johnson, regarding such coverage both before and after their separation, is helpful. RCW 48.22.030, first enacted in 1967 and amended in 1980, 1981, 1983, and 1985, requires insurance companies to make UIM coverage available in all Washington automobile insurance policies.[2] *See* Laws of 1967,

---

[2]RCW 48.22.030 currently provides in pertinent part:

"(1) 'Underinsured motor vehicle' means a motor vehicle with respect to the ownership, maintenance, or use of which either no bodily injury or property damage liability bond or insurance policy applies at the time of an accident, or with respect to which the sum of the limits of liability under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover.

"(2) No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles, hit-and-run motor vehicles, and phantom vehicles because of bodily injury, death, or property damage, resulting therefrom, except while operating or occupying a motorcycle or motor-driven cycle, and except while operating or occupying a motor vehicle owned or available for the regular use by the named insured or any family member, and which is not insured under the liability coverage of the policy. The coverage required to be offered under this chapter is not applicable to general liability policies, commonly known as umbrella policies, or other policies which apply only as excess to the insurance directly applicable to the vehicle insured.

"(3) Except as to property damage, coverage required under subsection (2) of this section shall be in the same amount as the insured's third party liability coverage unless the insured rejects all or part of the coverage as provided in subsection (4) of this section. Coverage for property damage need only be issued in conjunction with coverage for bodily injury or death. Property damage coverage required under subsection (2) of this section shall mean physical damage to the insured motor vehicle unless the policy specifically provides coverage for the contents thereof or other forms of property damage.

"(4) A named insured or spouse may reject, in writing, underinsured coverage for bodily injury or death, or property damage; and the requirements of subsections (2) and (3) of this section shall not apply. If a named insured or spouse has rejected underinsured coverage, such coverage shall not be included in any supplemental or renewal policy unless a named insured or spouse subsequently requests such coverage in writing. The requirement of a written rejection under this subsection shall apply only to the original issuance of policies issued after July 24, 1983, and not to any renewal or replacement policy."

ch. 150, § 27; Laws of 1980, ch. 117, § 1; Laws of 1981, ch. 150, § 1; Laws of 1983, ch. 182, § 1; Laws of 1985, ch. 328, § 1. The statute requires that this coverage be offered initially in the same amount as the prospective insured's third party liability or bodily injury coverage. Once UIM coverage is offered as part of the new policy, the insured has the option of contracting for complete, partial, or no UIM coverage at all. The insurer must initially include UIM coverage in the insured's policy and cannot eliminate the option without an express written request on the part of the insured to decline all or part of the coverage. Once the insured declines to contract for all or part of the full UIM coverage, the insurer is not obligated to provide UIM coverage at the same levels as the bodily injury or third party liability limits unless the insured subsequently makes a written request to reinstate such coverage.

Farmers automobile policy 79-2910-73-85 was first issued to Larry Johnson in 1963. Barbara and Larry Johnson, Teresa's parents, were married in 1968. On February 24, 1983, Larry Johnson made changes in the coverage limits under this policy, which at the time insured a 1977 Thunderbird. He increased the policy's bodily injury and property damage coverage. He also declined the option of having the policy's UIM coverage match the bodily injury limits. Thus, as of February 24, 1983, the policy limits on protection for bodily injury were $100,000 per person/$300,000 per occurrence, with UIM coverage limited to $50,000 per person/$100,000 per occurrence. In order to effectuate this change, Larry Johnson signed a form titled "Agreement Deleting Underinsured Motorist Coverage" and checked a box next to the statement: "I accept Underinsured Motorist Coverage as indicated on the New Business application. I realize that Underinsured Motorist Coverage may be written for limits as high as the BI-PD [bodily injury — property damage] limits." Barbara John-

son had not discussed these coverage changes in the policy with her husband and was not aware of his decision to make changes. Larry Johnson was the named insured on this policy with coverage extending to Barbara as well. Barbara Johnson usually paid the premiums on the policy and handled the invoices.

On May 5, 1985, Barbara and Larry Johnson were legally separated, and on August 8 of that year they filed for divorce. Barbara traded in the 1977 Thunderbird and bought a 1985 Toyota Corolla in August 1985. She telephoned David Seaquist, the Johnsons' insurance agent during their marriage, to arrange coverage for the new Toyota. Barbara Johnson told David Seaquist that she and Larry were separated, and that she had a new address and a different car. On August 28, 1985, she signed an "Application for Change" on policy 79-2910-73-85. The policy changes she desired were indicated by check marks in the appropriate places on the form. These changes included: (1) replacement of the auto insured; (2) change of the "named insured" from her husband, Larry, to herself; (3) change in the address of the insured to her new address; and (4) change of her insurance agent.

Barbara Johnson did not, in August 1985, request changes in any of the coverage limits under the policy. Thus, the UIM limit remained at the $50,000 per person/$100,000 per occurrence limit established by Larry in February 1983. Farmers made the changes indicated on the form and placed the coverage that had been on the 1977 Thunderbird onto the 1985 Toyota Corolla.

Barbara Johnson paid at least two renewal premiums as the new named insured of policy 79-2910-73-85: for the coverage period from August 28, 1985 through March 15, 1986, and for the period running from March 15, 1986 through September 15, 1986. Her coverage limits were

listed on the face of each invoice sent to her. Consistent with the coverage limits on the Thunderbird before the August 28, 1985 "Application for Change" form was completed, the limits were bodily injury coverage of $100,000 per person/$300,000 per occurrence and UIM limits of $50,000 per person/$100,000 per occurrence. In February 1986, Farmers sent Barbara Johnson a "Six Months Renewal Premium Notice" to remind her of the March 15 policy renewal date. At the bottom of one of the sheets of the notice, the following promotional language was conspicuously printed in capital letters:

> DID YOU KNOW THAT YOU MAY NOW HAVE UNDERINSURED MOTORIST COVERAGE IN AMOUNTS UP TO YOUR BODILY INJURY LIABILITY AND/OR PROPERTY DAMAGE LIMITS. IF INTERESTED, CONTACT YOUR AGENT.

This notice also listed the current limits on Barbara Johnson's bodily injury and UIM coverage. On May 28, 1986, a decree of divorce was entered dissolving the marriage of Barbara and Larry Johnson. On June 20, 1986, the motorcycle accident occurred in which Teresa Johnson was seriously injured.

In July 1987, Barbara Johnson filed suit against Farmers seeking a declaration that the UIM coverage under her policy was $100,000, and also seeking prejudgment interest on the amount Farmers had admitted to owing, but had not paid due to the dispute. (This second claim has been settled and is not before this court.)

In October 1989, Farmers moved for summary judgment; this motion was denied. Barbara Johnson later moved for summary judgment, and this motion was granted. The trial court ruled that under RCW 48.22.030, a partial waiver of UIM coverage on the same policy number (from a limit of $100,000 down to a limit of $50,000) signed by Larry Johnson during the couple's marriage was no longer binding on Barbara after that marriage ended. Thus, she was entitled to the prewaiver limit of UIM coverage; that is, the same level of UIM coverage as third

party liability coverage, $100,000. Farmers appealed this ruling and this court accepted certification.

Farmers argues that Larry Johnson's waiver of full UIM coverage during the marriage was valid and binding on Barbara Johnson through and after the couple's separation and divorce. Farmers contends that since RCW 48.22.030 makes it incumbent on the insured to request full UIM coverage if the insured wants such coverage reinstated after a valid waiver, and since neither Barbara nor Larry Johnson ever made a request for either a new policy or reinstatement of full UIM coverage, the waiver remained in effect at the time of Teresa Johnson's accident. Barbara Johnson argues that she personally never waived full UIM coverage, and that even if her husband's waiver was effective against her during the marriage, once the couple separated and she made herself the new named insured on the policy, Larry Johnson's waiver was no longer binding on her. Furthermore, Barbara Johnson submits that since the changes she requested in August 1985 were so extensive as to create in effect a new policy, then under RCW 48.22.030 full UIM coverage should have been provided on a new policy until Farmers received an express waiver from Barbara Johnson.

■ Because this appeal arises out of an order granting summary judgment, we engage in the same inquiry as the trial court. *Central Wash. Bank v. Mendelson-Zeller, Inc.*, 113 Wn.2d 346, 351, 779 P.2d 697 (1989). That both parties moved for summary judgment does not alter the relevant inquiry concerning the facts and legal issues presented. *Sarruf v. Miller*, 90 Wn.2d 880, 883, 586 P.2d 466 (1978).

## ANALYSIS

■ ■ This court has held that an insurance regulatory statute becomes part of the insurance policy. *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 86, 794 P.2d 1259 (1990). In order for this court to decide whether the limit of UIM coverage set by Farmers in Barbara Johnson's policy is in violation of RCW 48.22.030, the level of coverage mandated

by the Legislature must be determined through analysis of "the intent and purpose of the statute, the rulings of this court, and the contract between the insurance company and the party asserting coverage." *Blackburn*, at 87.

This court has previously construed the purpose of the UIM statute

> as allowing an injured party to recover those damages which the injured party would have received had the responsible party been insured with liability limits as broad as the injured party's statutorily mandated underinsured motorist coverage limits.

*Britton v. Safeco Ins. Co.*, 104 Wn.2d 518, 531, 707 P.2d 125 (1985). We have noted the legislative purpose behind the UIM statute is to ensure the availability of a source of recovery to the innocent victim of an auto accident when the responsible party does not provide adequate protection. *Blackburn*, at 87; *see also Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 707 P.2d 1319 (1985). We have also held previously that since "parties contract with UIM insurers to provide an additional layer of compensation, the contractual relationship between the insurer and the insured must be considered." *Blackburn*, at 88.

Two questions are essential to determine the level of UIM coverage Barbara Johnson was entitled to receive at the time of her daughter's injury: (1) Was the 1983 waiver of full UIM coverage by Larry Johnson valid as to Barbara Johnson at the time of the accident? (2) Did Barbara Johnson's 1985 changes in coverage constitute the creation of a new policy for the purposes of the UIM statute?

The statute in question is a chapter added to the Washington code in 1967. It originally required that insurance companies make *uninsured* motorist coverage available in all auto insurance policies. Laws of 1967, ch. 150, § 27, codified as RCW 48.22.030. In 1980, this chapter was amended to change the term "uninsured" to "*underinsured*" motorist coverage. Laws of 1980, ch. 117, § 1. The statute was further amended effective September 1, 1981. There is no dispute by the parties that, at the time Larry Johnson

signed a partial waiver of UIM coverage on the Johnsons' policy on February 24, 1983, the 1981 version of RCW 48.22.030 was the effective version, as the 1983 amendment was not yet effective.[3] Under subsection (4) of the 1981 amendment, once the insured had waived all or part of the available UIM coverage, it was up to the insured to make a written request for reinstatement of full UIM coverage.[4] Thus, a waiver remains in force until a written initiative by the insured.

Barbara Johnson does not dispute the validity of the waiver by Larry Johnson during their marriage; that under policy number 79-2910-73-85, the Johnsons' coverage was validly changed to UIM limits of $50,000 per person/$100,000 per occurrence; and that this was less than the full amount of their bodily injury limits of $100,000 per person/$300,000 per occurrence. The trial court ruled that the waiver with regard to Barbara Johnson by Larry Johnson during the marriage was without question effective. The question is whether the waiver valid for both spouses during the marriage survived the separation and divorce of the parties and Barbara Johnson's execution of a change form regarding coverage with Farmers. We hold that the waiver remained effective and survived the execution of changes in the policy. We

---

[3]The 1981 version of the statute applied at the time Larry Johnson signed the waiver of full UIM coverage and up until the effective date of the 1983 amendment, July 24, 1983. The 1985 version of the statute, which remains the current version, was the effective form at the time Barbara Johnson signed the "Application for Change" on the policy. The 1983 version of the statute applied in the interim.

[4]The 1981 version of RCW 48.22.030 provided in part:

"(3) Coverage required under subsection (2) of this section shall be in the same amount as the insured's third party liability coverage unless the insured rejects all or part of the coverage as provided in subsection (4) of this section.

"(4) The insured may reject underinsured coverage for either bodily injury or death or property damage and the requirements of subsections (2) and (3) of this section shall not apply. If the insured has rejected underinsured coverage, such coverage shall not be included in any supplemental or renewal policy unless the insured subsequently requests such coverage in writing." Laws of 1981, ch. 150, § 1.

reverse the trial court's denial of summary judgment to Farmers.

## A
## The Waiver Remained Valid as to
## Barbara Johnson

In its order granting Barbara Johnson's motion for summary judgment, the trial court ruled the waiver signed February 24, 1983, by Larry Johnson allowing for underinsured motorist coverage in an amount less than the parties' liability coverage did not, as a matter of law, bind Barbara Johnson as of the date of the accident on June 20, 1986. In denying Farmers' earlier motion for summary judgment, the trial court ruled that the waiver by one spouse on behalf of the other spouse did not survive the termination of the community. The trial court ruled that since Barbara Johnson never personally executed a waiver and the marital waiver did not survive the Johnsons' separation or divorce, Farmers was obligated under RCW 48.22.030 to extend full UIM coverage to Barbara until such time as she executed a waiver of her own.

■ We hold to the contrary. The waiver or relinquishment of rights on behalf of the Johnsons' marital community remained valid by operation of law beyond the termination of the Johnsons' marriage. The validity of a spousal waiver of UIM coverage under RCW 48.22.030 and its binding effects were addressed by the Court of Appeals in *Hall v. Allstate Ins. Co.*, 53 Wn. App. 865, 770 P.2d 1082 (1989). Observing that nothing in the statutory language of RCW 48.22.030 suggested any change or restriction on the general principles of community property and agency applicable to a marriage when dealing with waivers of UIM coverage, the court held that a waiver of UIM coverage by a person who purchases automobile insurance on behalf of a marital community is binding on both spouses. The basis for this holding was that pursuant to RCW 26.16.030 (with some exceptions not applicable to this

case), community property, including insurance contracts, may be managed and controlled by either spouse.

In this case, there is no dispute as to the validity of the waiver during the marriage. Barbara Johnson argues that *Hall* is distinguishable because the couple in that case was still married. She contends the waiver in this case was no longer binding upon her after the breakup of her marriage. But, as "parties contract with UIM insurers to provide an additional layer of compensation, the contractual relationship between the insurer and the insured must be considered." *Blackburn*, at 88. *Hall* viewed insurance policy UIM coverage in contractual terms. From this standpoint, UIM coverage may be viewed in the same manner as community contractual debts and obligations. As one spouse manages community affairs with the effect of binding or benefiting the community, then the other spouse enjoys the same benefits and incurs the same obligations. The statutory obligation or burden both Barbara and Larry Johnson incurred under the insurance contract once they waived full UIM coverage was the burden of having to take affirmative steps with their insurer if they later desired to reacquire full UIM coverage.

In *Watson v. Duce*, 380 F.2d 535 (9th Cir. 1967), the court held that under Washington law a wife was bound by an agreement made by her husband, and that as manager of the community property, he could bind the community even without her knowledge or consent. *Watson*, at 537. The court further held that under Washington law burdens on community property entered in this manner are not terminated by the couple's divorce. *Watson*, at 537. *Watson* relied on cases in which property bound by the community was then transferred to the wife in divorce proceedings. Obligations or liens on the property in these cases were held to continue against the community property and to be valid against that part of the property transferred to the wife by divorce as her separate property, even though the

wife did not originally know of the obligation. *See Capital Nat'l Bank v. Johns,* 170 Wash. 250, 16 P.2d 452 (1932); *Dizard & Getty v. Damson,* 63 Wn.2d 526, 530, 387 P.2d 964 (1964); *Britt v. Damson,* 334 F.2d 896 (9th Cir. 1964). These cases, holding a wife was bound by the management acts of the husband, were decided before the 1972 amendments to the community property laws establishing equal management control of community property. It has been accepted in commentary, however, that "[t]he analysis in pre-1972 cases that defined the scope of the management and transfer power of the husband before the statutory equalization of the power between the spouses is now applicable to the wife's acts as well." Cross, *Community Property Law in Washington,* 61 Wash. L. Rev. 13, 76 (1986). In Washington, either spouse is authorized to act in management of community affairs under RCW 26.16.030. The exceptions to this rule are not relevant to the disposition of the instant case.

Either Larry or Barbara Johnson could have bound the other by individually executing a valid waiver, with that waiver surviving the termination of the marriage. Such a construction is consistent with the equal management authority principle.

## B
### The 1985 Changes Did Not Create a New Policy

■■ The changes made in the policy by Barbara Johnson after completing the "Application for Change" form in August 1985 did not create a new policy with Farmers, which would have required Farmers under statute to make a new offer of UIM coverage. Rather, Barbara Johnson's changes in the policy effected a continuation of the existing policy with Farmers. Since RCW 48.22.030 does not require insurers to reoffer full UIM coverage on renewal policies, it remained Barbara Johnson's responsibility under statute to request reinstatement of full UIM coverage under her existing policy.

The decision in *Makela v. State Farm Mut. Auto. Ins. Co.*, 147 Ill. App. 3d 38, 497 N.E.2d 483 (1986) is instructive on the question of when policy changes create a new policy, and noted a majority of jurisdictions which have dealt with the question do not find a new policy created when a party replaces a vehicle covered under an existing policy with a new vehicle. *See Makela*, at 42-46; *Metropolitan Property & Liab. Ins. Co. v. Gray*, 446 So. 2d 216 (Fla. Dist. Ct. App. 1984); *El-Habr v. Mountain States Mut. Cas. Co.*, 626 S.W.2d 171 (Tex. Ct. App. 1981); *Myers v. Thibeaux*, 365 So. 2d 266 (La. Ct. App. 1978); *Hicks v. State Farm Mut. Auto. Ins. Co.*, 568 P.2d 629 (Okla. 1977). In *Makela*, it was held under an Illinois UIM statute (requiring insurers to notify their insureds of the right to obtain UIM coverage up to the limits of their bodily injury liability) that addition of a new car to an existing policy is no more than a renewal of, or an action supplementary to, the original policy. *Makela*, at 49-50.

The court established that in the greater number of states with such statutes, such as Florida, Texas, Oklahoma, Louisiana, and perhaps Minnesota and Tennessee, no new UIM offer would be required when changes are made to an existing policy for which an adequate offer of UIM coverage had earlier been made. *Makela*, at 45-46. Thus, once an insurer had notified an insured of UIM rights under statute, the insured did not have to give a new UIM offer for a new car under a multiple vehicle policy. *Makela*, at 49-50. The *Makela* decision cites *Kerr v. State Farm Mut. Auto. Ins. Co.*, 434 So. 2d 970 (Fla. Dist. Ct. App. 1983) for its discussion of the materiality standard for changes in policies that in effect create new policies. In *Kerr*, it was held that the actions of the insurer in substituting a wife's name for that of her deceased spouse as the named insured on an existing auto policy providing the same coverage levels on the same vehicle did not amount to so material a variation in the policy as to require the insurer to reoffer UIM coverage under Florida statute.

In this case, Barbara Johnson made herself the named insured on the policy and changed the vehicle insured. In so doing, she listed her new address, and listed GMAC as the lienholder on the new vehicle. There were no changes made in coverage, and where coverage levels remain constant, the majority of jurisdictions support the conclusion that no new policy is created. In her affidavit, Barbara Johnson acknowledges that the result of her August 1985 discussions with David Seaquist was the placing of the new car under the existing policy:

> After Larry and I had separated, sometime in August, 1985, I purchased a new Toyota. On about August 28, 1985 I contacted the office of David Seaquist, an agent for Farmers Insurance, to arrange coverage on that car. We ended up putting the Toyota on the policy mentioned above, in place of the car previously covered on that policy.

The "policy mentioned above" in the affidavit is Farmers policy 79-2910-73-85. In the context of arguing there was no continuing community obligation on the insurance contract with Farmers, it is submitted by the respondent that: "Barbara Johnson took on that policy as her separate obligation and then *renewed* it." (Italics ours.) Brief of Respondent, at 11. While the continuation of the same policy number is not determinative on the issue of whether a policy is new or only a renewal of an existing policy, the fact that no changes in coverage limits are made is consistent with the act of continuation of the policy.

The respondent cites *Arms v. State Farm Auto. Ins. Co.*, 465 A.2d 360 (Del. Super. Ct. 1983), *aff'd*, 477 A.2d 1060 (Del. 1984) and *Lucky v. Equity Mut. Ins. Co.*, 259 Ark. 846, 537 S.W.2d 160 (1976) to support her contention that her 1985 policy changes were so fundamental as to create a new policy. However, the *Arms* decision was based in part on changes in the amount of coverage. *Arms*, at 362. No coverage changes were made by Barbara Johnson. And in *Makela* it is made evident that these two cases

represent the minority view as to what constitutes creation of a new policy. *Makela,* at 45-46.

Barbara Johnson's actions effected a continuation of the Farmers policy at existing coverage levels, even while changing the auto covered, the named. insured and address, and while requesting a new Farmers agent. Her signed change form exhibits no change in coverage levels. The respondent's argument that she did not request any changes in coverage because she believed she already possessed full UIM coverage supports a conclusion that she sought a continuation in coverage rather than a new policy. The contention that respondent was not made aware of her rights or coverage levels at the time of her changes is not supported by the record. Barbara Johnson does not refute the indication by the Farmers agent, David Seaquist, in his deposition that he did in fact review UIM coverage limits with her in August 1985 when they discussed her changes in the existing policy. His recollection is supported by a checklist kept in the ordinary course of business showing that he reviewed UIM limits with Barbara Johnson. When asked at her deposition, Barbara Johnson could only reply to this assertion that she did not remember whether her UIM coverage limits were discussed. This lack of recollection leaves unsupported the assertions in her complaint of having been uninformed.

We reject the contention that a new policy was created by Barbara Johnson's execution of an Application for Change form in August 1985 on policy 79-2910-73-85. The changes made had no bearing on coverage limits; on the contrary, the record indicates a desire on the part of Barbara Johnson to continue existing coverage limits. Coverage limits were left the same even after adequate notification of existing limits given in invoices handled and paid by her both before and after the August 1985 changes in the policy. The replacement of the covered automobile in an existing policy does not amount to the creation of a new

policy under RCW 48.22.030. Absent a change in coverage levels, neither does the substitution of one spouse for the other as the "named insured" under a policy create a new policy.

We hold that a continuation of an existing auto insurance policy by one spouse after separation or dissolution of the marital community, even after making changes in the named insured and/or the substitution or addition of autos to the policy, does not create a new policy by operation of law for the purposes of requiring a new offer of UIM coverage. In such instances there must first be a request for a modification in levels of coverage for the policy to be distinguished from a "renewal" or "supplemental" policy under RCW 48.22.030(4).[5]

Since no new policy was created by Barbara Johnson's changes, and RCW 48.22.030 does not require insurers to reoffer full UIM coverage on renewal policies, the existing UIM limits on the policy in question remained effective, consistent with the valid partial waiver of UIM coverage.

## C
## Public Policy

The respondent argues that the public policy behind RCW 48.22.030 dictates that she be held to have UIM coverage in an amount equal to her liability coverage with Farmers. It is submitted that the UIM statute is a protective statute, to be broadly construed. The burden on persons such as Barbara Johnson if Farmers were to prevail, it is urged, would be "enormous" and the matter of UIM

---

[5]The *Makela* decision recognized that it is for the Legislature to eliminate the need for judicial interpretation of legislative intent regarding what is encompassed by the terms "renewal" and "supplemental" policies. *Makela*, at 50. In the absence of legislative elaboration, we adopt a construction guided by the majority approach in *Makela*. The need for clarification of the Washington UIM scheme has been addressed in commentary. *See* Dellwo & Conniff, *The Washington Underinsured Motor Vehicle Insurance Statute: Reading the Legislature's Mind*, 23 Gonz. L. Rev. 235 (1987-1988).

protection for such people would be left to "pure chance".
We disagree.

■ While we recognize that RCW 48.22.030 is a protective statute, nevertheless parties may elect to waive this protection. RCW 48.22.030 significantly increases public protection by imposing on insurers the duty of making UIM coverage *available* to the same extent as liability coverage initially in all auto insurance policies. The statute does not impose an absolute duty to provide UIM coverage. The coverage may be waived, presumably in favor of lower premium rates. All the statute requires of persons bound by a waiver of full UIM coverage and who later decide they want reinstatement is that they make a written request for it. This requirement is not unduly burdensome on spouses who, after separation, adopt an existing policy.

CONCLUSION

RCW 48.22.030 requires insurers to make an offer of UIM coverage to the insured unless that coverage is waived. This court has previously stated that the statute ensures the *availability* of UIM coverage to auto insurance policyholders in the state of Washington. The statute does not permanently fix UIM coverage in policies. Once coverage has been waived, the burden is on the insured to request reinstatement of UIM coverage in writing.

A valid waiver of full UIM coverage had been executed on the policy in question in this case. That waiver extended by operation of law beyond the termination of the Johnsons' marital community. Since no new policy was ever issued to Barbara Johnson, and since neither Barbara nor Larry Johnson made a written request for reinstatement of full UIM coverage, Farmers was not required under RCW 48.22.030 to extend such coverage to Barbara Johnson at the time of Teresa Johnson's accident.

We reverse the trial court's denial of summary judgment to Farmers and grant of summary judgment to Barbara

Johnson. The cause is remanded for proceedings not inconsistent with this opinion.

DORE, C.J., UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, and SMITH, JJ., and CALLOW, J. Pro Tem., concur.