[No. 20699-4-II.   Division Two.   March 20, 1998.]

LEO JOCHIM, SR., ET AL., *Appellants*, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Respondent*.

*Gideon D. Caron* of *Morse & Bratt*, for appellants.
*Jackson H. Welch* of *Landerholm, Memovich, Lansverk & Whitesides, P.S.*, for respondent.

HOUGHTON, C.J. — Leo and Frances Jochim filed a lawsuit against State Farm (1) seeking a declaratory judgment that the applicable amount of their underinsured motorist coverage was $100,000, and (2) alleging claims of bad faith and violations of the Consumer Protection Act. State Farm counterclaimed for a declaratory judgment that the applicable amount was $25,000. Upon cross-motions for summary judgment, the trial court granted State Farm's motion for declaratory relief. We affirm.

## FACTS

The facts are undisputed. On October 8, 1985, the Jochims applied to State Farm for automobile insurance for a 1977 Chevrolet pickup truck. The semiannual premium for the policy was $119.40. The policy provided $100,000 in liability coverage and $25,000 in personal injury protection, but did not include comprehensive, collision, death or dismemberment coverage. In addition, at the

time of application, Leo Jochim signed a form entitled "Acknowledgment of Coverage Selection or Rejection" (Acknowledgment) indicating that State Farm offered him the opportunity to purchase underinsured motorist coverage (UIM) up to an amount equal to his third party liability coverage of $100,000/$300,000. Instead, he selected a lower limit of $25,000/$50,000 in coverage for bodily injury and $10,000 for property damage.[1] The policy became effective on October 19, 1985.

About a week later, the Jochims notified State Farm that they had sold their 1977 Chevrolet truck and replaced it with a financed 1985 GMC truck. The Jochims added collision, comprehensive, and death indemnity coverage for the new vehicle. Additionally, UIM property damage coverage was automatically increased by State Farm from $10,000 to $25,000 per incident because of company policy. The semiannual premium for the newer vehicle increased to $221.26.

In October 1989, the Jochims purchased and financed a 1989 Chevrolet Blazer, replacing the 1985 GMC truck. Although the premium increased marginally, no additional changes to the policy were made.

On August 21, 1995, Leo Jochim was injured in an automobile accident with an uninsured motorist. The Jochims disputed State Farm's assertion of $25,000/$50,000 in UIM coverage and filed a lawsuit, claiming that State Farm was required to reoffer higher UIM coverage and that having failed to do so, the higher limit should apply. The Jochims sought a declaratory judgment of coverage and damages for bad faith and violations of the Consumer Protection Act. State Farm counterclaimed for similar declaratory relief and attorney fees for defending a frivolous lawsuit.

---

[1]The waiver of UIM coverage stated as follows:

I understand and agree that this acknowledgment of coverage selection or rejection of all or part of Underinsured Motor Vehicle Coverages shall be applicable to the policy of insurance on the vehicle described below, on all future renewals of the policy or future policies issued to me because of a change of vehicle or coverage, or because of an interruption of coverage, unless I subsequently request such coverage in writing.

Upon cross-motions for summary judgment, the trial court ruled in State Farm's favor but denied its request for attorney fees. The Jochims appeal the trial court's determination that the applicable amount of UIM coverage was $25,000.

## ANALYSIS

*Summary Judgment*

On review of summary judgment, an appellate court engages in the same inquiry as the trial court. *Hill v. J.C. Penney, Inc.*, 70 Wn. App. 225, 238, 852 P.2d 1111, *review denied*, 122 Wn.2d 1023 (1993). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993). The appellate court considers all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. *Clements*, 121 Wn.2d at 249. The motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Clements*, 121 Wn.2d at 249.

*Underinsured/Uninsured Motorist Coverage*

The Supreme Court has held that insurance regulatory statutes are incorporated into the insurance policy. *Johnson v. Farmers Ins. Co.*, 117 Wn.2d 558, 817 P.2d 841 (1991). RCW 48.22.030 requires insurers to make UIM coverage available in all Washington automobile insurance policies in the same amount as the insured's third party liability or bodily injury coverage. *Clements*, 121 Wn.2d at 250; RCW 48.22.030(2).[2] Once coverage is offered as part of the new policy, the insured has the option to

---

[2]RCW 48.22.030(2) provides in pertinent part that:

No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided

contract for complete, partial, or no UIM coverage at all. *Johnson*, 117 Wn.2d at 562; RCW 48.22.030(4).[3] The insurer must initially include UIM coverage in the insured's policy and cannot eliminate the option without an express written request by the insured declining all or part of the UIM coverage. *Johnson*, 117 Wn.2d at 562. But once the insured declines all or part of the full UIM coverage, the insurer is not obligated to provide UIM coverage at the same levels as the liability coverage or to reoffer UIM coverage when issuing supplemental or renewal policies, unless the insured requests reinstatement of the coverage in writing. *Johnson*, 117 Wn.2d at 562-63.

Under RCW 48.22.030, each time an insurer issues a "new" policy, it is required to offer UIM coverage. If a subsequent change to the initial policy is merely supplemental to or a renewal of the existing policy, and the insured rejected or selected a lower coverage amount at the time of the policy's issuance, the initial rejection of full or partial coverage is also effective for later policy changes. In the latter instance, the insurer does not violate its statutory duty by failing to reoffer UIM coverage.

In distinguishing between "new" policies and "supplemental" or "renewal" policies, the Supreme Court has adopted a standard of "materiality," that is, whether the original policy was changed in any material respect. *Johnson*, 117 Wn.2d at 571; *see Koop v. Safeway Stores, Inc.*, 66 Wn. App. 149, 154, 831 P.2d 777 (1992), *review denied*, 120 Wn.2d 1022 (1993) (noting *Johnson's* adoption of a "materiality standard" to distinguish new policy versus continuation of existing policy). In applying this standard

---

therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles.

[3]RCW 48.22.030(4) provides in pertinent part that:

A named insured or spouse may reject, in writing, underinsured coverage for bodily injury or death, or property damage, and the requirements of subsections (2) and (3) of this section shall not apply. If a named insured or spouse has rejected underinsured coverage, such coverage shall not be included in any supplemental or renewal policy unless a named insured or spouse subsequently requests such coverage in writing.

to determine the applicable amount of UIM coverage, we must consider "the intent and purpose of the statute" and the "contract between the insurance company and the party asserting coverage." *Johnson*, 117 Wn.2d at 566 (internal quotation marks omitted).

*Materiality of Changes*

The Jochims claim that the substitution of vehicles under their existing insurance policy, combined with the addition of collision, comprehensive, death indemnity, and increased UIM property damage coverages, materially changed their existing policy, effectively creating a "new" policy within the meaning of RCW 48.22.030. They assert that State Farm was therefore obligated to reoffer UIM coverage up to the amount of their liability coverage and it failed to do so. The Jochims, however, did not alter the amount of their third party liability coverage.

Two Washington cases have addressed the issue of the materiality of subsequent policy changes: *Johnson v. Farmers Ins. Co.*, 117 Wn.2d 558, and *Koop v. Safeway Stores, Inc.*, 66 Wn. App. 149. In *Johnson*, the original named insured previously elected lower UIM coverage limits instead of full coverage. Thereafter, the insured separated from his wife, who acquired the original insured vehicle. The wife then replaced the vehicle insured initially with a newer one and arranged for coverage with the original insurer, naming herself as the principal insured on the policy. The policy number and amounts of coverage remained the same. The Supreme Court held that the changes made by the wife to the initial policy, namely, replacing herself as the named insured and substituting the insured vehicle with a newer one, did not constitute "material" changes that created a "new" policy. Significant in the Court's decision was that "no changes in coverage limits [were] made," which, the Court explained, was "consistent with the act of continuation of the policy." *Johnson*, 117 Wn.2d at 572.

The Court of Appeals reached a similar result in *Koop v.*

*Safeway Stores, Inc.*, 66 Wn. App. 149, where it ruled that an employer's initial rejection of UIM coverage was effective against subsequent renewals where the subject matter, policy number, and coverage levels remained the same. In both *Johnson* and *Koop*, thus, the courts ruled that the changes to the existing policy did not constitute "material" changes largely because the policy coverage limits remained constant.

The present case is similar to *Johnson* and *Koop* in that the amount of liability coverage remained unchanged. But the case is also different because the Jochims increased the overall scope of their insurance policy with the addition of collision, comprehensive, and indemnity coverages. The question, then, is whether these changes to the Jochims' existing policy created a new policy within the meaning of RCW 48.22.030, even though the liability limits remained the same.

In construing the insurance statutes, we must give effect to the Legislature's intent. *Bailey v. Allstate Ins. Co.*, 73 Wn. App. 442, 445, 869 P.2d 1110 (1994); *Johnson*, 117 Wn.2d at 565; *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 87, 794 P.2d 1259 (1990). Here, RCW 48.22.030 requires insurers to offer UIM coverage to the same extent as the insured's third party liability coverage. Accordingly, the insurer's exposure to liability arising from an accident caused by an underinsured or uninsured motorist directly corresponds to the policyholder's limits of third party liability coverage. The addition of comprehensive, collision, and indemnity coverages, therefore, in no way alters or increases the insurer's exposure to additional UIM coverage; it is only liability coverage that corresponds by statute to the extent of UIM coverage that the insurer must make available. So, if the liability coverage limits remain constant, the insured will not be entitled to any additional amount of UIM coverage beyond the amount initially selected. It does not follow that an insurer should be obligated to reoffer UIM coverage or to obtain a second waiver or election of lower UIM limits.

Our rationale is consistent with the decisions of other courts reviewing this issue, which have held that an insurer must obtain an additional, separate waiver of UIM insurance *only* where there is an attendant or concomitant increase in liability coverage limits. *See e.g.*, *Roser v. Anderson*, 222 Ill. App. 3d 1071, 584 N.E.2d 865, 165 Ill. Dec. 41 (1991) (insured's increase in bodily injury liability coverage obligated insurer to reoffer identical amount of UIM coverage, even though insured waived coverage at time of policy's issuance); *Faucheaux v. Boston Old Colony Ins. Co.*, 633 So. 2d 959 (La. Ct. App. 1994) (subsequent increase in liability coverage required another waiver of UIM coverage); *Ruiz v. Lewis*, 579 So. 2d 1203 (La. Ct. App. 1991) (subsequent increase in bodily injury limits required additional written rejection of UIM coverage or selection of lower limits); *Gaar v. Sowards*, 573 So. 2d 499 (La. Ct. App. 1990) (insured's selection of higher limits of liability coverage was new policy mandating UIM coverage in amount equal to liability coverage); *State Farm Mut. Auto. Ins. Co. v. Arms*, 477 A.2d 1060 (Del. Super. Ct. 1984) (increase in liability coverage and substitution of vehicle are material alterations that give rise to a new policy).

Essentially, under the rationale followed by these courts, an increase in liability limits entitles the insured to increased UIM coverage because the respective insurance statutes require insurers to offer UIM insurance to the extent of liability coverage. *See Ruiz*, 579 So. 2d at 1207 (the insured must be given the opportunity to specifically waive or select lower limits of UIM coverage when the insured increases the liability limits). For the initial rejection or waiver of UIM coverage to remain effective against a subsequent increase in liability coverage, thus, the insured must have expressly waived eligibility for the additional UIM coverage.[4]

Consistent with the case law discussed above, we hold

---

[4]As explained by the court in *Guilbeau v. Shelter Mut. Ins. Co.*, 549 So. 2d 1250, 1255 (La. Ct. App. 1989), interpreting a similar statute:

that the addition of collision, comprehensive, and indemnity coverages to the Jochims' policy were not material changes in their existing policy that created a "new" policy. While the Jochims increased the overall scope of their policy by adding collision, comprehensive, and death indemnity coverages, the limits of their liability coverage remained constant. As such, they were not entitled to a reoffering of additional UIM coverage because the extent of their entitlement to UIM insurance was the same, even after adding the other types of coverages. Their initial express waiver of UIM insurance remained effective against the subsequent policy additions and State Farm had no further obligation to obtain a second waiver or election of lower UIM limits. *Accord, Allen v. State Farm Mut. Auto. Ins. Co.*, 617 So. 2d 1308 (La. Ct. App. 1993) (addition of comprehensive and collision coverages when insured substituted vehicle under policy did not constitute new policy requiring execution of additional waiver or election of lower limits of UIM coverage); *Lovoi v. Ladreyt*, 655 So. 2d 387 (La. Ct. App. 1995) (where liability limits remain constant, insurer is under no obligation to reoffer UIM insurance).

Affirmed.

SEINFELD and HUNT, JJ., concur.

---

If the original selection of lower limits of uninsured motorist coverage is presumed to remain in effect when the bodily injury limits of the policy are increased, this would result in a situation where an insured is found to reject additional uninsured motorist coverage before the opportunity exists to accept such additional coverage.