957 P.2d 1283 (1998)
Susan and David TORGERSON, wife and husband, Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., a foreign corporation, Respondent.
No. 16715-1-III.
Court of Appeals of Washington, Division 3, Panel Nine.
June 30, 1998.
Reconsideration Denied August 13, 1998.
*1285 James A. Domanico, Crary & Clark, Spokane, for Appellants.
Steven M. Cronin, Mullin, Cronin, Casey & Blair, Spokane, William R. Hickman, Pamela A. Okano, Reed, McClure, Seattle, for Respondent.
*1284 SWEENEY, Judge.
RCW 48.22.030 requires a written rejection of uninsured/underinsured motorist (UIM) coverage limits less than liability limits for any new policy. Susan and David Torgerson bought a 1983 Dodge van after trading in their Ford van. They added coverages, including UIM coverage, to their insurance policy. However, their State Farm Mutual Automobile Insurance Company policy number remained the same. After an accident with an uninsured motorist, State Farm claimed the UIM coverage was the statutory minimum of $25,000 per person and $50,000 per accident (25/50,000) but could not produce a written rejection. It relied instead on habit and custom evidence to support its claim that the Torgersons must have signed a rejection asking for UIM limits less than their $100,000 per person and $300,000 per accident (100/300,000) liability limits. A jury agreed with State Farm.
The first question presented is whether this is a new (requiring a new written UIM rejection) or replacement policy. We conclude it is a new policy. The next question is whether evidence of habit is admissible to satisfy the written rejection requirement of RCW 48.22.020(4). We conclude it is not. We therefore reverse the judgment and remand for entry of judgment in favor of the Torgersons.

FACTS
In March 1983, Susan and David Torgerson bought insurance from State Farm for their 1973 Ford van. They waived UIM and personal injury protection (PIP) coverage by written rejection forms.
In February 1984, the Torgersons replaced their 1973 Ford van and bought a 15-passenger 1983 Dodge van. Through their agent, David Reighley, they asked for "maximum limits." They intended to use the van to haul Boy Scouts, Bluebirds, church groups and other large groups of children. This latest policy had the same account number as the earlier policy and the same liability limits, 100/300,000. But the Torgersons added PIP, comprehensive, collision and UIM coverage. The policy listed UIM limits at 25/50,000.
In July 1992, the Torgersons' van collided with an uninsured driver. State Farm rejected their request for 100/300,000 UIM limits coverage and offered only 25/50,000. Ms. Torgerson admitted that her State Farm premium billings listed UIM limits of 25/50,000. The Torgersons nonetheless deny that they knew the UIM coverage limits.
They also deny signing the statutorily required UIM waiver for UIM coverage less than their liability limits. RCW 48.22.030(4) (written waiver required on new policies only). State Farm could not produce a copy of the statutorily required signed waiver. However, two of its agents testified that it was their custom and practice to discuss *1286 UIM coverage and secure a written waiver if UIM limits were less than liability limits.
The court concluded that the policy was not a "new" policy and therefore State Farm had no obligation to obtain a written rejection for UIM limits less than liability limits. It determined that the issue for the jury was "[d]id the Torgersons request and not receive 100/300,00 coverage or did they request and did they receive what Mr. Reighley says was 25 and 50 and for the reasons he enunciated?" Report of Proceedings at 216 (emphasis added). It rejected the Torgersons' proposed jury instruction 6:
Changes made to an existing policy may constitute a new policy as opposed to a renewal policy if material changes in coverage are requested. If a new policy is created, State Farm has the burden of obtaining a knowing written rejection of Uninsured Motorist benefits in order to avoid providing Uninsured Motorist Coverage in the same amounts as liability limits.
The jury found the Torgersons had not requested the higher UIM limits.

DISCUSSION
A. Standard of Review.
We review the trial court's decision to enter judgment as a matter of law de novo. We view conflicting evidence in the light most favorable to the nonmovant. Hollmann v. Corcoran, 89 Wash.App. 323, 331, 949 P.2d 386 (1997) (citing Forro Precision, Inc. v. International Bus. Mach. Corp., 673 F.2d 1045, 1058 (9th Cir.1982)). The question then is whether there is any evidence or reasonable inferences from the evidence that would support a verdict for the Torgersons. Willis v. Simpson Inv. Co., 79 Wash.App. 405, 410, 902 P.2d 1263 (1995) (citing Baldwin v. City of Seattle, 55 Wash.App. 241, 247, 776 P.2d 1377 (1989)).
B. New Versus Replacement Policy.
An insurance regulatory statute becomes part of the insurance policy. Johnson v. Farmers Ins. Co., 117 Wash.2d 558, 565, 817 P.2d 841 (1991) (citing Blackburn v. Safeco Ins. Co., 115 Wash.2d 82, 86, 794 P.2d 1259 (1990)). Insurance companies must make UIM coverage available to Washington policyholders. RCW 48.22.030; Corley v. Hertz Corp., 76 Wash.App. 687, 692, 887 P.2d 401 (1994), review denied, 128 Wash.2d 1007, 910 P.2d 481 (1996). Unless the insured has signed a written rejection, UIM coverage limits equal the liability limits. RCW 48.22.030(3). But if the insured has previously rejected underinsured coverage and the policy under consideration is only a renewal policy, another written UIM rejection is not required. RCW 48.22.030(4). Once the insured declines all or part of the UIM coverage, the insurer is not obligated to provide UIM coverage at the same levels as the bodily injury or third party liability limits unless the insured subsequently makes a written request to reinstate such coverage. Johnson, 117 Wash.2d at 562, 817 P.2d 841. But if a new policy is issued, UIM coverage must again be offered and rejected in writing, otherwise UIM coverage automatically equals the liability limits of the new policy. Corley, 76 Wash.App. at 694, 887 P.2d 401.
The Torgersons contend that the policy on their 1983 Dodge van was a new policy. And therefore they had to be given the right to reject UIM limits in writing. And because State Farm cannot produce the written rejection of UIM coverage, their UIM limits are 100/300,000 by operation of RCW 48.22.030(3). State Farm responds that the 1983 Dodge van replaced the 1973 Ford van. The policy was only a renewal of the existing policy. And, therefore, the 25/50,000 limits noted on the declaration page are the proper UIM limits.
In Johnson, the Supreme Court adopted a "materiality standard" to distinguish a new policy from a renewal policy. Johnson, 117 Wash.2d at 571, 817 P.2d 841 (citing with approval Kerr v. State Farm Mut. Auto. Ins. Co., 434 So.2d 970 (Fla.Dist.Ct.App.1983); Makela v. State Farm Mut. Auto. Ins. Co., 147 Ill.App.3d 38, 100 Ill.Dec. 505, 497 N.E.2d 483 (1986)); Koop v. Safeway Stores, Inc., 66 Wash.App. 149, 154, 831 P.2d 777 (1992), review denied, 120 Wash.2d 1022, 844 P.2d 1018 (1993). The inquiry is fact specific. We look to whether "the changes made to the policy [are] sufficiently material to support *1287 a conclusion that a new, as opposed to a renewal, policy was issued." Id.
A "majority of jurisdictions which have dealt with the question do not find a new policy created when a party replaces a vehicle covered under an existing policy with a new vehicle." Johnson, 117 Wash.2d at 571, 817 P.2d 841 (citing Makela, 147 Ill. App.3d at 42-46, 100 Ill.Dec. 505, 497 N.E.2d 483; Metropolitan Property & Liab. Ins. Co. v. Gray, 446 So.2d 216 (Fla.Dist.Ct.App. 1984); Hicks v. State Farm Mut. Auto. Ins. Co., 568 P.2d 629 (Okla.1977), overruled on other grounds by Beauchamp v. Southwestern Nat'l Ins. Co., 746 P.2d 673 (Okla.1987); El-Habr v. Mountain States Mut. Cas. Co., 626 S.W.2d 171 (Tex. Ct.App.1981), writ ref'd n.r.e.). Likewise, the addition of a new car to an existing policy is no more than a renewal of, or an action supplementary to, the original policy. Johnson, 117 Wash.2d at 571, 817 P.2d 841 (citing Makela, 147 Ill. App.3d at 49-50, 100 Ill.Dec. 505, 497 N.E.2d 483).
The Johnson court also accepted the reasoning of Kerr: "the actions of the insurer in substituting a wife's name for that of her deceased spouse as the named insured on an existing auto policy providing the same coverage levels on the same vehicle did not amount to so material a variation in the policy as to require the insurer to reoffer UIM coverage under Florida statute." Johnson, 117 Wash.2d at 571, 817 P.2d 841 (citing Kerr, 434 So.2d 970).
The court in Johnson concluded that the policy was not new. The Johnson policy changed the named insured, changed the insured vehicle, listed a new address, and listed GMAC as the lienholder on the new vehicle. Id. at 572, 817 P.2d 841. But the court noted: "There were no changes made in coverage, and where coverage levels remain constant, the majority of jurisdictions support the conclusion that no new policy is created." Id. (emphasis added). The court also noted that the continuation of the same policy number is not determinative. Id.
The fact specific question is: Have there been material changes in coverage which make the policy a "new" policy? Id. at 570-74, 817 P.2d 841.
Here, the original policy on March 24, 1983, insuring the Ford van included the following coverage:

Liability Limits 100/300,000 Yes
Personal Injury Protection Waived
Comprehensive No
Collision No
Uninsured/Underinsured Waived

The policy issued for the 1983 Dodge van on February 29, 1984, included the following coverage:

Liability Limits 100/300,000 Yes
Personal Injury Protection Yes
Comprehensive Yes
Collision Yes
Uninsured/Underinsured Yes

Significantly, in Koop and Johnson, there were no changes to coverage, just changes of vehicles and named insureds. Here, four new coverages were added, two of which had been specifically rejected in the earlier policy. And the fact of UIM coverage is not in dispute here, only the amount25/50,000 or 100/300,000.
State Farm argues that the endorsement of additional types of coverage is not enough to trigger its obligation to obtain a UIM waiver. Because the amount of liability coverage did not change, State Farm contends the policy cannot be "new" as a matter of law. It relies on two Louisiana cases, which established a bright line rule that only when liability limits increase will the policy be considered new. Tugwell v. State Farm Ins. Co., 597 So.2d 1039, 1050 (La.Ct.App.), rev'd on other grounds, 609 So.2d 195 (La.1992); Allen v. State Farm Mut. Auto. Ins. Co., 617 So.2d 1308 (La.Ct.App.1993). State Farm also urges that this is the lesson of Johnson as well. We do not read Johnson as adopting a bright line rule. Johnson requires instead that we look at the materiality of the changes. Johnson, 117 Wash.2d at 571, 817 P.2d 841.
After this case was argued, Division II of this court filed its opinion in Jochim v. State Farm Mut. Auto. Ins. Co., 90 Wash.App. 408, 952 P.2d 630 (1998).
*1288 The facts in Jochim are similar, but not identical, to those presented here. The original policy included the following coverages:

Liability Limits 100/300,000 Yes
Personal Injury Protection Yes
Comprehensive No
Collision No
Death/Dismemberment No
Uninsured/Underinsured
 *Bodily Injury 25/50,000 Waived full limits
 *Property 10,000

After replacing their vehicle, the Jochims' policy included the following coverages:

Liability Limits 100/300,000 Yes
Personal Injury Protection Yes
Comprehensive Yes
Collision Yes
Death/Dismemberment Yes
Uninsured/Underinsured
 *Bodily Injury 25/50,000 Yes (stayed the same)
 *Property 25,000 Increased

Id. at 631-32. Significantly, the Jochims included UIM coverage in both policies. But the Jochim court also seems to read Johnson as imposing a bright line rule  if liability coverage does not change, then the materiality standard adopted in Johnson has not been met. Id. at 633. Again we do not read Johnson so narrowly. Mrs. Johnson neither added new coverages nor changed the types or levels of any coverage. Johnson, 117 Wash.2d at 572-73, 817 P.2d 841.
But the facts here are distinguishable from Jochim, in any event. Unlike Jochim, the Torgersons added the very coverage at issue here  UIM.
As we read Johnson, and the authorities it relies on, this is a new policy and the court erred in holding to the contrary.
C. Evidence of Habit, Routine, and Business Practice.
The next question is whether the evidence of habit, routine, and business practice presented here satisfies the written waiver requirements of RCW 48.22.030(4).
Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.
ER 406.
Admissibility of habit evidence or business practice is within the trial court's discretion. Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 326, 858 P.2d 1054 (1993).
Habitual behavior consists of semi-automatic, almost involuntary and invariably specific responses to fairly specific stimuli. Id. at 325, 858 P.2d 1054. Under this rule, evidence can be excluded only if the court determines the conduct does not reach the level of habit or routine. Id.
State Farm could not locate the rejection form in the Torgersons' file. And Agent Reighley had no independent recollection of the Torgersons' waiver. The court allowed testimony from Agent Reighley that State Farm agents obtain written UIM rejection forms whenever a customer requests UIM coverage less than liability limits. And it is always Agent Reighley's practice to follow company procedures. This routine company procedure is habit evidence for purposes of ER 406.
State Farm relies on the rule that "[a] witness may testify affirmatively that a writing of some general description is or was in existence or was executed." 5B Karl B. Tegland, Washington Practice, Evidence Law and Practice § 485, at 369 (3d ed.1989). But here no one saw the Torgersons sign a UIM rejection nor did anyone recall seeing their written rejection form. The cited rule then does not apply.
State Farm also argues that there is no requirement that it produce the written rejection form. It relies on two cases from other jurisdictions: Nationwide Mut. Ins. Co. v. Jones, 414 So.2d 1169 (Fla.Dist.Ct.App. 1982); Taruc v. State Farm Mut. Auto. Ins. Co., 218 Ill.App.3d 51, 578 N.E.2d 134, 161 Ill.Dec. 7 (1991). Both are distinguishable because neither state requires that the UIM rejection be in writing.
The public policy underlying the requirement of a written rejection militates against the admission of evidence of habit or routine. *1289 "Washington is one of the states which considers UIM coverage sufficiently important to require that any rejection of it must be in writing." Clements v. Travelers Indem. Co., 121 Wash.2d 243, 255, 850 P.2d 1298 (1993). So proving intent of parties at the time of contracting does not delete the legislative intent requiring a written rejection. Id. at 255, 256, 850 P.2d 1298. "A written rejection by the named insured is required by RCW 48.22.030(4) in order for UIM coverage to be legally waived in Washington. The absence of UIM coverage in an insurance policy is insufficient to fulfill the statutory mandate of a `written waiver.'" Id. at 256, 850 P.2d 1298. Absent "a written rejection, the intent of the various parties is irrelevant to a determination of coverage." Id. (emphasis added).
Here, absent some specific recollection that the Torgersons signed a rejection form, there is no substantial proof of a written rejection. Peterson v. Littlejohn, 56 Wash.App. 1, 11, 781 P.2d 1329 (1989) (there must be substantial evidence, as opposed to mere theory, speculation, or scintilla of evidence, to uphold jury verdict). And the court therefore erred in admitting evidence of habit or routine.
D. Evidence of Subsequent Changes to the UIM Coverage.
The testimony of State Farm agent, Thomas Boyles, raises the same problem.
The Torgersons moved to Woodinville, Washington, in 1986. Their file was transferred to Mr. Boyles. Mr. Boyles had no independent recollection of the Torgersons or of any conversations with them. The Torgersons added emergency road service and UIM property damage to their policy through Mr. Boyles.
The Torgersons contend the court abused its discretion by allowing this evidence because it was irrelevant. We disagree. The court properly allowed the evidence to give the jury a full understanding of the history of the policy. Rice v. Janovich, 109 Wash.2d 48, 65-66, 742 P.2d 1230 (1987) (trial court given broad discretion in finding evidence relevant for a complete understanding of facts).
But Agent Boyles went on to testify that he must have discussed the 25/50,000 in UIM coverage because of his habit and practice. Although he had no obligation to obtain another written rejection, he said the limited UIM coverage would have made him nervous. And he therefore most certainly would have discussed their limits with them at the time. State Farm offered this as proof of the Torgersons' knowledge of UIM limits of 25/50,000 and proof of their intent, at the time they contracted for UIM on the Dodge van.
Again, Clements is helpful. When there is nothing in writing rejecting full UIM limits, the intent of the parties is irrelevant. Clements, 121 Wash.2d at 256, 850 P.2d 1298. Therefore, Agent Boyles' testimony of his habit and routine should not have been allowed.
State Farm urges the context rule as further grounds for the admission of Agent Boyles' testimony. Berg v. Hudesman, 115 Wash.2d 657, 667-69, 801 P.2d 222 (1990). But here there is no writing to construe or interpret.
E. Attorneys Fees.
The Torgersons are entitled to attorney fees under Olympic S.S. Co. v. Centennial Ins. Co., 117 Wash.2d 37, 811 P.2d 673 (1991) for having to litigate the issue of coverage. They are also entitled to fees and costs on appeal.
The judgment is reversed.
KURTZ, Acting C.J., and KATO, J., concur.